

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-1997

# SEC v. Hughes Cap Corp

Precedential or Non-Precedential:

Docket
96-5401

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"SEC v. Hughes Cap Corp" (1997). *1997 Decisions*. Paper 152.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 9, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5401

SECURITIES AND EXCHANGE COMMISSION

v.

HUGHES CAPITAL CORPORATION; F.D. ROBERTS
SECURITIES, INC.; HOWARD ACKERMAN; GILBERT
BEALL; DOMINICK FIORESE; FREDERICK GALIARDO;
SHELDON G. KANOFF; JOHN KNOBLAUCH; SUSAN
LACHANCE; ALAN LIEB; FREDERIC MASCOLO; JOHN
PERFETTI; LIONEL REIFLER; IRA VICTOR

       Lionel Reifler, Susan Lachance,
       and Howard Ackerman,
       Appellants

Appeal from the United States District Court
for the District of New Jersey
D.C. No. 88-cv-05238

Submitted Under Third Circuit LAR 34.1(a)
June 13, 1997

Before: MANSMANN, NYGAARD, and ROSENN,
Circuit Judges.

(Opinion filed July 9, 1997)

       Lucinda O. McConathy
       Allan A. Capute
       Jacob H. Stillman

       Securities & Exchange Commission
       450 Fifth St., N.W.
       Washington, D.C. 20549
       Counsel for Appellee

       Martin R. Raskin
       Raskin & Raskin
       2937 S.W. 27th Avenue
       Suite 206
       Miami, FL 33133
       Counsel for Appellants

OPINION OF THE COURT

ROSENN, Circuit Judge.

The three appellants in the present matter were
defendants in an action brought by the Securities and

Exchange Commission (SEC) in the United States District
Court for the District of New Jersey. The district court
granted summary judgment in favor of the SEC against all
the defendants on the issues of both liability and damages.[1]
Susan Lachance and Howard Ackerman, two of the
defendants, appeal from both the judgment of liability and
the disgorgement order; Lionel Reifler appeals only from the
order of disgorgement. Although the appellants raise a
number of issues, our principal concern is with their
challenge to the district court's order of disgorgement. We
affirm.

_____

1. The district court had jurisdiction over this action pursuant to 28
U.S.C. S 1331 and 15 U.S.C. SS 77v and 78aa (granting federal district
courts exclusive jurisdiction over cases involving violations of the
Securities Act of 1933 and the Securities Exchange Act of 1934
respectively). We have appellate jurisdiction pursuant to 28 U.S.C.
S 1291.

2

I.

Between 1968 and 1976, Lionel Reifler had six felony
convictions for crimes including securities fraud, tax
evasion, sale of unregistered securities and operation of an
unregistered brokerage firm. His wife, Susan Lachance, is
involved in a number of business ventures, independently
and with her husband. She is the sole owner and president
of Susan Lachance Industrial Design (SLID) and she is the
president of Flat Rock Developers, Inc. (Flat Rock), a
corporation formed by Lachance, Reifler, Gilbert Beall and
Frederic Mascolo. Howard Ackerman, a bookkeeper, has
been employed by Reifler since March, 1984; he shared a
suite of offices with Reifler and Lachance and served as the
bookkeeper for the Hughes Capital Corporation (Hughes)
from its inception.

In 1985, Reifler and two other defendants, Beall and
Mascolo, acquired Hughes, a Florida shell corporation, as a
vehicle for a public stock offering.[2] John Knoblauch became
Hughes' "nominal owner and chairman of the board of
directors." Reifler and the others amended Hughes'
Registration Statement, changing the stock-to-warrant ratio

from 1:3 to 1:21. Hughes then announced a public offering of the stock. The defendants, including Lachance and Ackerman, purchased at least 88% of the stock sold in the public offering.

In 1986, a public relations firm hired by the Reiflers issued press releases announcing Hughes' plans to purchase four other businesses; these press releases did not mention that the acquisition candidates were all owned and controlled by affiliates of Hughes. Among the companies named as acquisition candidates were SLID and Flat Rock. In one press release, Lachance represented, as president of SLID, that SLID was in good financial shape (in fact, it had only just emerged from bankruptcy) and was being acquired by Hughes, which had sufficient capital to purchase SLID and expand its business. In a press release issued on behalf of Flat Rock, Lachance, using her married name of "Susan Reifler," similarly represented that Flat

_____

2. A more complete statement of the facts is available in Wiley v. Hughes Capital Corp., 746 F. Supp. 1264 (D.N.J. 1990).

Rock was an active concern (in fact, it was dormant and had no revenue at the time of the press release) and that Hughes had sufficient capital to acquire the business and to expand its real estate holdings. In neither press release did Lachance reveal her marital connection to Reifler or her status as a principal shareholder in Hughes.

Ackerman, as the bookkeeper, admits that he executed most of the transactions necessary to perpetuate the fraudulent scheme. He transferred money among the various bank accounts held by Reifler, Lachance and the other participants in the Hughes stock sale, although he acknowledged that many of these transactions had no legitimate business purpose. He obtained cashier's checks with money from some of these accounts to purchase stock and warrants for nominee accounts in the names of various Reifler associates, including himself, Reifler, Lachance, Lachance's minor daughter, and Reifler's housekeeper.

After the price of the stock rose, warrants were sold from the accounts controlled by Reifler and his cohorts into the public market. Ackerman deposited most of the proceeds of these sales, approximately $1.15 million, into various accounts held by himself, Reifler, Lachance and others. The money was then transferred from account to account and withdrawn in small amounts by Ackerman and the other participants in the stock fraud scheme. Eventually, the

scheme was uncovered. A number of the participants, including Reifler, were criminally prosecuted; all of the participants were sued civilly, both by the SEC in the present action and in a class action suit brought by the defrauded purchasers of Hughes stock.

II.

We exercise plenary review over a district court's order granting summary judgment. Bieregu v. Reno, 59 F.3d 1445, 1449 (3d Cir. 1995); United States v. Koreh, 59 F.3d 431, 438 (3d Cir. 1995). "On review the appellate court is required to apply the same test the district court should have utilized initially." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).

4

The standard for summary judgment is well-established: Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view all evidence in favor of the non-moving party. Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir. 1993). Additionally, all doubts must be resolved in favor of the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 (3d Cir. 1983). The party challenging the motion for summary judgment must be able to produce evidence that, "when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." Kline v. First W. Gov't Sec., 24 F.3d 480, 485 (3d Cir. 1994).

A.

In the present matter, the district court granted the SEC's motion for summary judgment on the charge that Lachance violated 15 U.S.C. S 77q(a)(2). This section, also known as Section 17(a)(2) of the Securities Act of 1933, provides in pertinent part:

> (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly
>
> * * *

> (2) to obtain money or property by means of any
> untrue statement of a material fact or any omission to
> state a material fact necessary in order to make the
> statements made, in the light of the circumstances in
> which they were made, not misleading.

Thus, this section bars the use of untrue statements or the omission of material statements of fact which are misleading. As the district court properly stated, omissions

and misstatements are material if there is a substantial likelihood that the omitted or misstated facts would have been "viewed by the reasonable investor as having significantly altered the `total mix' of information available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

A violation of S 77q(a)(2) can be established by a showing of negligence. Aaron v. SEC, 446 U.S. 680, 701-02 (1980); Finkel v. Stratton Corp., 962 F.2d 169, 175 (2d Cir. 1992). Lachance concedes that she made false statements in the two press releases issued in relation to Hughes' purported acquisition of SLID and Flat Rock. Such information concerning Hughes' ability and intention to acquire two purportedly financially healthy corporations made Hughes' stock appear more attractive to prospective purchasers. She argues, however, that she believed these statements were true at the time she made them and that she did not act negligently in making them because she relied on the assertions of her husband and of other representatives of Hughes Capital. Thus, she argues that a genuine issue of material fact remains as to whether she was negligent in relying on information provided to her by her husband and others and this issue of material fact precludes summary judgment on the question of liability under S 77q(a)(2).

It is doubtful that Lachance makes this argument seriously. She stated in her deposition that she was involved in formulating the two press releases and that she edited them. She, as president of SLID and Flat Rock, knew she was misrepresenting the financial status of each of these companies. She also knew that she was using two different names in the press releases, lending an impression that the companies were utterly separate concerns. Clearly, she knew that she was married to one of the principal forces behind Hughes, and she should have known that this relationship would be of interest to the stock-buying public. Presumably, she knew about her

husband's criminal past, and certainly a cautious woman with that knowledge would question her husband's assertion that his current business venture was not fraudulent. Thus, she was at least negligent in failing to

6

mention her marriage to one of the principal backers of Hughes, her own personal stake in Hughes, and the financial status of SLID and Flat Rock, material omissions which invoke liability under S 77q(a)(2).

Lachance further asserts that she did not make the statements regarding Hughes' financial strength negligently, because both Reifler and Knoblauch assured her that Hughes had sufficient capital to acquire the two companies. Lachance asserts that her reliance creates a genuine issue of material fact that should be tried before a jury. However, the facts here are not in dispute (she does not assert that she studied Hughes' books or checked the financial statements) and her reliance on the alleged assertions, if made, would not be deemed reasonable in the context of making financial statements so obviously intended to influence potential investors. "One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts S 552 (1977). A number of states have adopted this Restatement Rule as the standard for determining liability for a negligent misrepresenatation.3

A reasonable businesswoman selling her company would certainly not rely only on the assertions of the purchaser that he had sufficient capital to complete the acquisition; rather, a reasonable businesswoman would undertake some investigation of the financial status of the entity with which she was negotiating. Here, Lachance admits that she

_____

3. Some of the states are noted in the following cases: Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 740, n. 16 (11th Cir. 1995) (Florida); Petrillo v. Bachenberg, 655 A.2d 1354, 1360 (1995) (New Jersey); Rocky Mountain Helicopters v. Bell Helicopter, 24 F.3d 125, 130 (10th Cir. 1994) (Texas); Arthur Children's Trust v. Keim, 994 F.2d 1390, 1400 (9th Cir. 1993) (Arizona); Jordan-Milton Machinery v. F/V Teresa Marie, II, 978 F.2d 32, 36 (1st Cir. 1992) (Maine); J.E. Mamiyee Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 615 (3d Cir. 1987) (Pennsylvania); Abell v. Potomac Ins. Co., 858 F.2d 1104, 1131 (5th Cir. 1988) (Louisiana),

vacated on other grounds, 492 U.S. 914 (1989).

did not undertake any investigation of Hughes' financial condition, but rather simply trusted the assertions of her convicted-felon husband and his business partner in a sham corporation. There are no disputed facts which could alter this conclusion. Therefore, we perceive no error in the district court's grant of summary judgment on this count.

B.

The district court also granted the SEC's motion for summary judgment on the charge that Ackerman violated 15 U.S.C. S 77q(a)(3). This section, also known as Section 17(a)(3) of the Securities Act of 1933, provides in pertinent part:

> (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly.
>
> * * *
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Similar to S 77q(a)(2), scienter is not required for a violation of this section; negligence is sufficient to establish a violation of S 77q(a)(3). Aaron, 446 U.S. at 701-02; Finkel, 962 F.2d at 175.

Ackerman argues that he did not act negligently when he assisted Reifler and the others to purchase almost the entire IPO while keeping quiet their own involvement in Hughes and then assisted them in reselling the stocks to the general public and redistributing the profits. He obtained cashier's checks with which to purchase the IPO but directed that his name not appear on these cashier's checks as the purchaser; rather, the cashier's checks bore the names of the nominee account holders. He transferred the proceeds of the sale among the various accounts held by those involved in the Hughes scheme, even though he concedes that these transactions had no apparent business purpose. Yet, Ackerman has employed a Nuremberg defense

by arguing that he simply did what he was told and was not in a position to question the orders given to him by his employer, Reifler. He further argues that he has no background or knowledge in securities and thus did not find any of the transactions suspicious.

Regardless of Ackerman's purported lack of knowledge or his assertion that he was just being a good soldier and following orders, the undisputed facts establish that the transactions were so clearly suspicious that Ackerman was negligent in continuing to complete the transactions that helped further the fraud. Among the indicia of fraud that Ackerman should have picked up on: (1) use of the aliases by various parties (including Reifler's purchase of stock as "Lionel Lachance"); (2) stock purchases by unlikely parties (such as Reifler's minor daughter, Reifler's housekeeper, and a number of corporations Ackerman knew lacked operating capital); (3) the lack of business purpose to a number of the transactions made; and (4) the need to hide himself as purchaser of the cashier's checks with which the IPO purchase was completed. There are no disputed facts that would establish that Ackerman did not act negligently in ignoring all these clear indicators of questionable behavior. Therefore, the district court did not err in granting summary judgment on this count against Ackerman.

III.

The district court held that Lachance would be jointly and severally liable for the disgorgement of the approximately $1.4 million in illegal profits traceable to the securities fraud. Lachance argues that the evidence failed to establish that she received anything more than $85,000 in fraud proceeds and that it is unfair to order her to be jointly and severally liable for any amount above that figure. Lachance argues that this result is particularly unfair in light of the finding that she acted only negligently, and not with scienter, regarding the fraud. A district court's order of disgorgement is reviewed for abuse of discretion. CFTC v. American Metals Exchange Corp., 991 F.2d 71, 76 (3d Cir. 1993). Our review of the granting of summary judgment is plenary. Id.

9

"Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." SEC v. First City Fin. Corp., 890 F.2d 1215, 1230 (D.C. Cir. 1989). When apportioning

liability among multiple tortfeasors, it is appropriate to hold all tortfeasors jointly and severally liable for the full amount of the damage unless the liability is reasonably apportioned. "Where joint tortfeasors cause a single and indivisible harm for which there is no reasonable basis for division according to the contribution of each, each tortfeasor is subject to liability for the entire harm." United States v. Alcan Aluminum Corp., 964 F.2d 252, 268-69 (3d Cir. 1992).

Courts have held that joint-and-several liability is appropriate in securities cases when two or more individuals or entities collaborate or have close relationships in engaging in the illegal conduct. See First Jersey Securities, 101 F.3d at 1475; Hateley v. SEC, 8 F.3d 653, 656 (9th Cir. 1993). In the instant case, the defendants all collaborated in a single scheme to defraud Hughes' investors through the bogus initial public offering and the subsequent sale of warrants. They enjoyed a"close relationship" with each other through their connection to Hughes, the other corporations used in the scheme, and the nominee accounts used to perpetuate the scheme.

The burden is on the tortfeasor to establish that the liability is capable of apportionment, Alcan, 964 F.2d at 269, and the district court has broad discretion in subjecting the offending parties on a joint-and-several basis to the disgorgement order. S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1475 (2d Cir. 1996), petition for cert. filed, 65 U.S.L.W. 3799 (U.S. May 23, 1997) (No. 96-1862). Imposing the burden upon the defendant of proving the propriety of the apportionment of the disgorgement amount in securities cases is appropriate and reasonable. Although in some cases, a court may be able easily to identify the recipient of ill-gotten profits and apportionment is practical, that is not usually the case. Generally, apportionment is difficult or even practically impossible because defendants have engaged in complex and heavily disguised transactions. See CFTC v. American Bd., 803 F.2d 1242,

10

1252 (2d Cir. 1986). Very often defendants move funds through various accounts to avoid detection, use several nominees to hold securities or improperly deprived profits, or intentionally fail to keep accurate records and refuse to cooperate with investigators in identifying the illegal profits. Hence, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." First City Financial Corp., 890 F.2d at 1232.

In the present matter, Lachance has failed to carry her

burden of establishing that the liability can be apportioned. The only documentary evidence that Lachance has offered to establish the apportionment of liability -- the photocopies of the admittedly altered check stubs and the summary of those photocopies -- was properly ruled inadmissible by the district court, as discussed in the next section. The only other evidence offered by Lachance is her own testimony that she did not receive that much money from the scheme. Not only can Lachance not support her testimony with specific facts or documentary evidence, her testimony is contradicted by strong evidence showing she received substantially more than $85,000.

The division of liability is an intensely factual determination, and summary judgment can be granted only when it is clear that no genuine issue of material fact regarding the apportionment of liability remains. As noted above, the burden is on the party challenging disgorgement -- in this case, Lachance -- to establish the manner in which liability should properly have been apportioned. Lachance's mere assertions that she did not receive the benefit of this money, in light of substantial evidence to the contrary (her acknowledgment that Reifler paid all household expenses, their lavish lifestyle, and expensive automobiles) does not create a triable issue of fact. In this matter, the amount of illegal proceeds is not in dispute. Rather, the only issue presented is whether Lachance should be subject to joint and several liability for the entire amount. When there is no documentary evidence to contradict the clear evidence that Lachance benefited substantially from this scheme and where Lachance has failed to set forth "specific facts showing there is a genuine issue for trial," the district court did not err in granting

11

summary judgment holding Lachance joint and severally liable for the disgorgement of the illegal proceeds of the securities fraud.

IV.

The district court refused to admit the proffered evidence that the defendants assert would establish the distribution of the proceeds from the securities fraud. Our review of a district court's ruling on an evidentiary matter is subject to the abuse of discretion standard.

The defendants assert that the court erred in refusing to admit photocopies of check stubs, arguing that these were admissible pursuant to Federal Rules of Evidence 803(6), the business records exception. They further assert that

photocopies of these check stubs are admissible pursuant to Rule 1003, which admits duplicates "to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Ackerman admits that the check stubs were "altered" before photocopying. Defendants assert that Ackerman's notations were a matter of reconciling the accounts, and the alterations did not affect the accuracy of the payee or amount of the checks themselves. However, there is nothing to support this assertion, and Ackerman himself testified that he cannot remember what information on the stubs was changed prior to photocopying. The defendants further assert that the canceled checks themselves will bear out the accuracy of these stubs; the canceled checks, however, could not be located in response to requests for them in discovery and thus the defendants cannot rely on missing evidence to support the authenticity of photocopies of admittedly altered check stubs. Given this scenario, it would be impossible to say that the district court abused its discretion in concluding that the photocopies of the check stubs indicated "a lack of trustworthiness" and thus were not admissible under Rule 803(6).

Accordingly, it was not an abuse of discretion for the district court to further refuse to admit the summary

12

exhibit that the defendants sought to admit pursuant to Rule 1006, which was based primarily on the altered check stubs. The summary was based on information which the court deemed inadmissible for lack of trustworthiness, a ruling which was not an abuse of discretion. Therefore, the district court did not abuse its discretion by refusing to admit a summary based on inadmissible evidence. Consequently, neither of the district court's challenged evidentiary issues were an abuse of discretion.

V.

Accordingly, for the reasons set forth above, we see no error in the district court's grants of summary judgment in favor of the Securities and Exchange Commission. Moreover, the district court did not err in holding Lachance jointly and severally liable for the disgorgement of the illegal proceeds of the securities fraud and in its evidentiary rulings. The judgment of the district court will be affirmed. The memorandum opinion of this court filed July 9, 1997 will be vacated and this will be the opinion of the court.

Costs will be taxed against the appellants.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13