John HOWARD Jr., Ph.D, Appellant,

v.

The BOARD OF EDUCATION OF the CITY OF EAST ORANGE; Everett Jennings; Robert Bowser, Individually and In Their Official Capacities.

No. 03–1969.

United States Court of Appeals, Third Circuit.

Argued Nov. 20, 2003.

Decided Dec. 29, 2003.

Kevin Kovacs [Argued], Purcell, Ries, Shannon, Mulcahy & O'Neill, Bedminster, NJ, for Appellant.

Stephen J. Edelstein [Argued], Schwartz, Simon, Edelstein, Celso & Kessler, Florham Park, NJ, for Appellee The Board of Education of East Orange.

Angelo R. Bisceglie, Catherine B. Liu [Argued], Bisceglie & Friedman, Florham Park, NJ, for Appellee Everett Jennings.

Hardge Davis, Jr. [Argued], East Orange, NJ, John W. Nails, Nails, Sims & Jackson, Chester, PA, for Appellee Robert Bowser.

Before RENDELL, BARRY and MAGILL,* Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Plaintiff John Howard, Jr., ("Howard") appeals the District Court's grant of summary judgment to the Board of Education of the City of East Orange ("Board"), Board member Everett Jennings, and Mayor Robert Bowser (collectively, "Defendants") with respect to Howard's First Amendment retaliation claim, which he brought pursuant to 42 U.S.C. § 1983.[1] We will remand this case to the District Court for further proceedings consistent with this opinion.

The District Court exercised jurisdiction under 28 U.S.C. § 1331. Our review of the District Court's final order is based on 28 U.S.C. § 1291.

Howard served as the Superintendent of Education for the City of East Orange School District from 1992 until his suspension in September of 2000 and eventual termination in 2002. Howard claimed that the adverse employment action was taken in retaliation for his public criticisms of Mayor Bowser and his investigation of Jennings' potential bid-rigging for construction contracts. The District Court held that although a jury could find that retaliatory animus existed, there was no genuine issue of material fact as to whether the Defendants would have nevertheless sought Howard's termination, referencing the proof at Howard's administrative proceedings of conduct warranting suspension. We review the District Court's grant of summary judgment *de novo*. *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 215 (3d Cir.2003).

I.

There has been no love lost between Howard and Mayor Bowser. Soon after Bowser was sworn into office in 1998, they

* Honorable Frank J. Magill, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. Howard also alleged violations of state law, including the New Jersey Conscientious Employee Protection Act, the New Jersey Law Against Discrimination, and breach of his employment contract. After dismissing Howard's federal claim, the District Court dismissed these state law claims without prejudice.

disagreed publicly over budget issues and the appointment of a School Treasurer. In the Spring of 1999, Howard and Bowser fought over the school board budget and Howard shared his criticisms of Bowser with the local press. In the Fall of 1999, Bowser reproached Howard over an allegedly offensive screenplay being developed as a school-sponsored activity. Howard countered with more denunciations of Bowser's policies, which were broadcast on local television.

Howard claimed that, in addition to this public feud with Bowser, his investigation into the possible unethical conduct of Board Member Jennings led to his suspension. In 1998, prior to his appointment to the Board, Jennings was a principal in a construction company, Evanbow Construction, along with Hamilton Bowser, the Mayor's brother. Evanbow contacted Howard toward securing school construction contracts but Howard did not respond. Subsequently, in May of 1999, Mayor Bowser appointed Jennings to the Board.[2] In November of 1999, Jennings visited the then-Board President Sheila Oliver at her home to complain about Howard's lack of response to Evanbow's solicitation for school construction work. Oliver noted in her affidavit that:

> Mr. Jennings told me that he thought this showed a lack of courtesy on the part of the Superintendent and it was an affront to the new administration of Mayor Bowser. He told me that I had to understand that the Board of Ed was the only game in town because the City's fiscal operations had been taken over recently. He also told me that if Dr. Howard was more cooperative, his problems would resolve.

Pa429–30.

Oliver then told Howard of this conversation, who in turn notified the Board, the Commissioner of Education, the State Attorney General, and initiated an internal investigation into Jennings' possible bid-rigging. In May of 2000, Howard informed the newly elected Board President and Vice President of this investigation of Jennings.

One month later, in June of 2000, the Board sought not to renew Howard's contract. Howard successfully appealed this decision to the Commissioner of Education, who found that the Board had failed to provide proper notice of nonrenewal, as required by Howard's employment contract. Consequently, Howard's post was renewed for another five years. Shortly thereafter, in July or August of 2000, the Board began an investigation into several charges filed against Howard. Pending this investigation of possible wrongdoing, in September of 2000, the Board resolved to suspend Howard. On December 12, 2000, Mary Ann Cool, President of the Board, filed sworn tenure charges against him. The numerous tenure charges included allegations that Howard directed school employees to perform personal services during school time, such as stealing school building supplies and installing them in Howard's private residence, moving the offices of the Superintendent without due notice to the Board, and various improprieties with respect to his annuity plan.

These tenure charges were then disputed in front of an Administrative Law Judge ("ALJ") and extensive hearings, lasting fourteen days, were held, involving over 120 exhibits and testimony from twenty-nine witnesses. However, the ALJ granted a motion in limine to bar Howard from presenting an affirmative defense of retaliatory motive, although Howard was permitted to raise retaliation during cross

---

2. By June of 2000, Bowser had appointed six out of the seven members of the Board.

examination of witnesses to demonstrate bias. Ultimately, on February 6, 2002, the ALJ found that the Board had proven several of the various tenure charges, each of which were found to be sufficient grounds for termination. In the face of Howard's strenuous objections, the Commissioner of Education ("Commissioner") reviewed and affirmed in large part the ALJ's findings.[3] The Commissioner found that Howard's conduct warranted termination.[4]

On February 13, 2001, Howard filed this federal action alleging *inter alia* that Defendants filed false tenure charges and suspended him in retaliation for speech protected by the First Amendment. In considering Defendants' motion for summary judgment, the District Court adopted the ALJ's findings and collaterally estopped Howard from relitigating whether there was just cause for his termination. Those findings established that Howard committed certain infractions that could be grounds for termination. Under the legal test for retaliatory motive, the District Court had to determine whether absent retaliatory motivation, plaintiff would have been nevertheless terminated. Concluding that any reasonable juror would find that Howard's conduct would have resulted in termination, regardless of retaliatory motive, the District Court granted Defendants' motions for summary judgment.

## II.

On appeal, Howard raises two specific objections to the District Court's grant of summary judgment. First, Howard argues that the District Court's application of collateral estoppel as to his having engaged in the conduct at issue was improper because he was denied a full and fair opportunity to litigate in the administrative proceeding. Second, and alternatively, Howard argues that the record contained a genuine factual dispute as to whether Defendants would have taken the same adverse action regardless of his protected speech.

With respect to collateral estoppel, federal courts attach the same preclusive effect to state administrative decisions as would the courts of that state. New Jersey law bars application of collateral estoppel when parties are not afforded a full and fair opportunity to litigate. *Zirger v. Gen. Acc. Ins. Co.*, 144 N.J. 327, 676 A.2d 1065, 1071 (1996). Howard contends that his inability to present an affirmative defense of retaliatory motivation in his administrative proceeding denied him a fair opportunity to litigate his case.

■ To show that the administrative forum was unfair, Howard must show that state procedures fell below the minimum requirements of due process as defined by federal law. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir.1990) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). We agree with the District Court that Howard was given a

**3.** The tenure proceedings established that Howard: 1) used a government employee to install electrical equipment at Howard's personal residence during school time; 2) improperly handled his annuity plan by, among other things, withdrawing without authorization $50,000 from the fund and endorsing and depositing in his own account a $32,000 check made payable to the Board; 3) moved the offices of the Superintendent without due notice to the Board; and, 4) hired a teacher purportedly for special education but who was actually intended to develop a screenplay during school time. Several other claims were found not to be established.

**4.** Howard's appeal of the Commissioner's Final Decision to the State Board of Education remains pending.

full and fair opportunity to challenge the validity of the tenure charges. Despite the inability to present a defense of retaliatory motive, the opportunity to cross examine witnesses for bias, the existence of judicial review, and the sheer robustness of the inquiry-Howard propounded 425 interrogatories, 175 document requests, deposed 3 witnesses, in a 14–day hearing-all indicate that Howard had ample chance to defend himself. Consequently, Howard was properly barred from relitigating whether he engaged in the conduct outlined in the Commissioner's findings and whether that conduct warranted termination. This objection is therefore to no avail.

■ However, we agree with the District Court that in light of the ALJ's restriction barring all testimony, exhibits, and comment by counsel related to retaliatory motivation, Howard did not have the opportunity to litigate his First Amendment retaliation claim and that claim is not barred.[5] Significantly, Howard's cross examination of witnesses called by Defendants fell short not only because he was not permitted to offer any affirmative proof of improper motive, but also because Defendants did not call the witnesses who, on cross examination, would have given testimony relevant to this issue. Thus, the District Court properly went on to consider the merits of this claim.

A public employee's claim of First Amendment retaliation is evaluated under a three-step process. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir.2001). First, the plaintiff must establish that the conduct in question was protected and a matter of public concern.[6] While this first step is a question of law, the remaining two are factual conclusions. *Id.* at 195; *see also Zamboni v. Stamler*, 847 F.2d 73, 79 n. 6 (3d Cir.1988) ("[I]nquiries [at the second and third steps], which follow a determination that speech is protected, are for a jury."). Second, plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action. With the first two steps, a plaintiff makes out a prima facie case of retaliatory action and, at the third step, the burden shifts to the defendant, who then can rebut the claim by "demonstrating 'it would have reached the same decision ... even in the absence of the protected conduct.'" *Baldassare*, 250 F.3d at 195 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

The District Court addressed each of these aspects of the claim. First, the District Court concluded that the speech in question was constitutionally protected, noting that Howard's criticisms of Mayor Bowser's educational policies and his investigations of bid-rigging were matters of public concern. At the second step of the

---

**5.** Howard contends that the District Court's separate treatment of the tenure charges and his First Amendment retaliation claim was illogical. We find that, to the contrary, such a distinction is both logical and supported by precedent. *See Bradley*, 913 F.2d at 1074 (drawing distinction between plaintiff's constitutional claims and "whether his conduct constituted grounds for dismissal under state law").

**6.** Where defendants acknowledge that the protected conduct motivated them to take ad-

verse action, courts must balance the plaintiff's interest in the speech against the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. *San Filippo v. Bongiovanni*, 30 F.3d 424, 435 n. 11 (3d Cir.1994). Because Defendants did not concede that their actions were motivated by Howard's protected conduct, the District Court properly did not address this element of the legal test.

analysis, the District Court considered the temporal proximity of Howard's protected conduct and the adverse action taken against him. In particular, the District Court observed that the Board's resolution to not renew Howard's contract in June of 2000, and the resolution to suspend Howard in September of 2000, were passed within one year of Howard's public criticisms of Bowser and very soon after Howard informed the Board of the internal investigation of Jennings. The relative coincidence of these events led the District Court to conclude that whether Howard's protected conduct constituted a substantial or motivating factor in the alleged retaliatory action was a triable issue of fact. At the third step, the District Court then properly noted that the burden shifted to Defendants to show that they would have made the same decision even absent the protected conduct. After close examination of the administrative findings of the ALJ and the Commissioner, the District Court concluded that:

> Defendants not only could have sought Plaintiff's termination absent the protected activity, but that they would have done so given the serious and compelling nature of the breaches of duty found by the Commissioner and the ALJ to have occurred.... [N]o reasonable jury could fail to conclude that the employer not only could have, but *would* have terminated Plaintiff, regardless of his protected activities.

Pa47–48.

On appeal, Howard contends that the evidence in the record suggests a genuine issue of material fact as to whether Defendants met their burden. In particular, Howard points to the public rancor between him and Bowser, his investigation of Jennings, and the Board's subsequent attempt not to renew his contract. These facts, along with former Board President

Oliver's affidavit testimony that Jennings promised fewer problems for Howard in exchange for Howard's cooperation in awarding construction contracts, surely raises a specter of retaliatory motive. We believe that these aspects of the case deserve consideration and discussion, yet we are unable to tell whether the District Court did take this evidence into account in finding Defendants had met their burden at the third step. The Court gave much weight to the state administrative findings, and, in its opinion, relied on the strength of this evidence alone in concluding that the Board would have terminated Howard in any event. No mention is made of the evidence of retaliation offered by Howard in connection with the District Court's proceedings. And, of course, in a summary judgment posture, all contested facts must be resolved in favor of Howard as the nonmovant. *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir.1997). Because we are uncertain whether the District Court improperly considered only the findings of the ALJ and the Commissioner as to Howard's conduct, we will remand for further explanation of the District Court's decision.

■ The District Court may have believed the Commissioner's findings alone should be dispositive of the Defendants' burden. If so, this belief was mistaken. As the District Court itself noted correctly, the Commissioner's findings were concerned exclusively with the validity of the tenure charges. As in *Bradley*, the state administrative proceedings "merely determined that the Board's purported reasons for firing him ... were both factually supported and legally sufficient." 913 F.2d at 1075. Those findings do not *by themselves* address the issue as to which Defendants have the burden–namely whether Howard would have been fired–or whether the charges would even have been brought–

had he not spoken out or rebuffed Jennings. In its summary judgment determination, the District Court should have also considered, if it did not do so, Howard's evidence of retaliatory motive, bearing in mind that, as noted above, the testimony relevant to this issue before the ALJ was drastically curtailed. We thus remand for further findings in this regard.[7] If, upon consideration of the whole record, the District Court determines that there is an issue of fact as to the third step, the case must proceed to trial.

### III.

Accordingly, we will reverse the District Court's grant of summary judgment and remand for further proceedings consistent with this opinion.

7. We emphasize that, pursuant to our holding, the District Court need not reconsider the findings of the Commissioner and the ALJ, that Howard had engaged in certain conduct, and that the conduct warranted termination under the applicable regulations.