**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2380
_____

FRANCISCO DIDIANO,
                                                            Appellant

v.

KAREN BALICKI; SOUTH WOODS STATE PRISON;
JOHN DOE(S) 1-10;JOHN DOE(S) 11-20
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 1-10-cv-04483)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2012
_____

Before: RENDELL, SMITH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 17, 2012)
_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

       Appellant Francisco Didiano ("Didiano") appeals the District Court's grant of

summary judgment in favor of the South Woods State Prison and Karen Balicki, the

prison administrator.  We will affirm.

## I.

In December 2008, Didiano was an inmate at South Woods State Prison in Bridgetown, New Jersey.  He had three cellmates, including a man named Duan Howard ("Howard"), a prisoner classified as having "mental health special needs."  On December 19, 2008, Howard used a prison-issued "hot pot" to boil water in the cell.  Under normal circumstances, the prison-issued hot pots are not supposed to be able to bring water to a boil, but Howard had altered his device to increase its power.  Howard then used the boiling water to attack Didiano, pouring it all over Didiano's face, head, neck, shoulders and back while he was asleep in the cell.  As a result, Didiano sustained serious and permanent injuries and was taken to an outside hospital to receive treatment for his burns.  Following his discharge from the hospital, he was transferred to the medical wing of Northern State Prison to convalesce.  On January 29, 2009, about a month after the assault, Didiano was transferred back to South Woods State Prison.

In April 2009, Didiano used the help of a so-called "prison paralegal" named Nash to file three official administrative complaints, called Inmate Remedy Forms, with the prison.  The record is bereft of information about Nash, and there is no evidence that he was a prison official or employee.  Didiano claims that he depended upon the services of Nash in using the Inmate Remedy System because he has "limited facility with the English language and with writing in particular."  Nash filled out the three administrative

2

complaints, alleging: (1) that the prison had "been negligent in administering medical care and treatment" to Didiano; (2) that Howard's assault on Didiano was due to the prison's "failure to properly inspect and adhere to safety standards"; and (3) that, because Howard was a "special needs" inmate, the prison should not have housed him in the general population.

Sometime later, prison officials responded with a "Corrective Action Form," which identified several deficiencies with the complaints. In particular, the Corrective Action Form stated: (1) that Didiano must complete a Health Services Request Form; (2) that his complaints did not contain *specific* information, and he must resubmit the complaint with additional information; and (3) that he cannot use the Inmate Remedy System forms for Department of Corrections disciplinary charges. In addition, the Corrective Action Form contained a handwritten note that instructed Didiano to "speak with housing unit Sat. clarify dates."[1]

When Didiano received the Corrective Action Form, he went to Nash and asked what he should do in response. Nash told Didiano that someone from the prison wanted to meet with him and that Didiano should wait for the meeting to be scheduled. Didiano followed Nash's advice and did not take any action.

In late May or early June 2009, Didiano met with a prison psychologist. During

---

[1] The handwriting is difficult to read, and defendants claim that the note actually states: "speak with housing unit *Sgt*. clarify dates." Although defendants' reading seems more plausible, we accept Didiano's reading for purposes of analyzing the grant of summary judgment.

the course of their conversation, Didiano told the psychologist about the complaints he had submitted, as well as the Corrective Action Form he had received in response. He asked the psychologist to follow-up on the complaints and see if a meeting with the prison officials would be scheduled. According to Didiano, however, the psychologist did not follow-up as requested. No one from the prison ever contacted him to set up a meeting.

On July 30, 2010, Didiano filed suit in New Jersey state court against the South Woods State Prison and the prison administrator, Karen Balicki ("Balicki"). Didiano named Balicki as a defendant in both her individual and official capacities. The complaint also listed numerous "John Doe" individuals as defendants. Didiano asserted claims under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights, alleging that defendants failed to protect him from Howard's unprovoked assault by allowing an inmate "with known psychological problems to remain in the general prison population" and to possess a "hot pot that was easily modifiable to become a dangerous instrumentality." He also asserted a claim under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2, for violations of the New Jersey state constitution under these same theories.

Defendants removed the case to federal court. Following removal, they filed a motion to dismiss or, in the alternative, for summary judgment, raising several grounds in support of their motion, including: (1) that Didiano's claims were barred by the Eleventh Amendment and the doctrine of sovereign immunity; (2) that Didiano's claims were

4

barred by the Prison Litigation Reform Act, because he had failed to exhaust his administrative remedies before bringing suit; (3) that the prison and defendant Balicki, in her official capacity, are not "persons" amenable to suit under either § 1983 or the NJCRA; and (4) that there were no grounds for holding Balicki liable in her individual capacity. Didiano opposed the motion.

Because the parties submitted evidence outside the pleadings, the District Court treated defendants' motion as one for summary judgment and granted the motion. The Court rejected defendants' argument that the suit was barred by sovereign immunity, but agreed that Didiano had failed to exhaust his administrative remedies, that defendants were not "persons" within the meaning of § 1983 and the NJCRA, and that there was no basis for a claim against Balicki in her individual capacity. Finally, the Court concluded that the claims against the John Doe individuals could not survive in light of the dismissal of the named defendants. Didiano timely appealed.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over a district court's grant of summary judgment, viewing all evidence in favor of the non-moving party and resolving all doubts in that party's favor. *Albright v. Virtue*, 273 F.3d 564, 570 (3d Cir. 2001); *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir. 1997); Fed. R. Civ. P. 56(a).

5

**A.**

Didiano argues that the District Court erred in concluding that his claims against the prison and Balicki (in her official capacity) must be dismissed because they are not "persons" within the meaning of the NJCRA. Like § 1983, the plain language of the NJCRA imposes liability on any "person" who violates a plaintiff's civil rights under color of law. In particular, the NJCRA provides in relevant part that:

> Any person who has been deprived of any . . . rights . . . secured by the Constitution or laws of the United States, or . . . by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion *by **a person** acting under color of law*, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. § 10:6-2(c) (emphasis supplied).

Interpreting the comparable language of § 1983,[2] the Supreme Court has held that the States, arms of the States, and state officials acting in their official capacities, are not

---

2  The language of the federal civil rights statute provides:

> *Every **person** who*, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis supplied).

"persons" within the meaning of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165 (3d Cir. 1997) (a political subdivision of the state is not a "person" within the meaning of § 1983 if it is effectively an "arm of the State" for Eleventh Amendment purposes).[3] Didiano concedes that his suit against the prison is essentially a claim against the Department of Corrections, an arm of the State of New Jersey. He also concedes that Balicki is a state official that he has sued in her official capacity. Thus, in the face of this binding Supreme Court authority, he does not dispute that his § 1983 claims against the prison and Balicki (in her official capacity) must fail. Rather, he contends that the District Court erred in dismissing his state-law NJCRA claim on this ground, arguing that there are good reasons why the word "person" should be interpreted differently in the NJCRA context than in § 1983, and should be construed to extend to defendants here. We disagree.

Although the NJCRA does not itself define the word "person," the term is defined elsewhere in the New Jersey code:

> Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.
> . . . .
> Person. The word "person" includes corporations, companies, associations,

---

[3] *Cf. Hafer v. Melo*, 502 U.S. 21, 23 (1991) ("We . . . hold that state officials sued in their *individual* capacities are 'persons' for purposes of § 1983.") (emphasis supplied).

societies, firms, partnerships and joint stock companies as well as individuals . . . *and, when used to designate the owner of property which may be the subject of an offense, includes this State*, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State.

N.J.S.A. § 1:1-2 (emphasis supplied). In other words, the statutory definition explicitly states that the word "person" shall include the State of New Jersey only in the limited circumstance of certain property disputes not applicable here. Thus, New Jersey has provided its own definition of the word "person," and that definition does not include the State or defendants which are the functional equivalent of the State.

Didiano is left to argue only that a construction that excludes the State from the definition of the word "person" is repugnant to the subject and context of the NJCRA. Once again, we disagree. Nothing in the language or subject matter of the NJCRA compels that conclusion.[4] Instead, Didiano relies on cases and statements from outside the context of the NJCRA, including: (1) general statements of law suggesting that "New Jersey has a long and powerful tradition of enforcing state constitutional rights"; and (2) arguments that constitutional claims are not barred by the State's sovereign immunity or

---

[4] Indeed, contrary to Didiano's argument, the text of the NJCRA actually seems to support the conclusion that the State is not a "person" subject to suit. Under the statute, one of the remedies for violating a plaintiff's constitutional rights is the imposition of a civil penalty. N.J.S.A. § 10:6-2(c) (citing subsection 10:6-2(e)). The statute directs, however, that this "civil penalty *shall be conveyed to the State Treasurer for deposit into the State General Fund.*" N.J.S.A. § 10:6-2(e) (emphasis supplied). If the State were found liable in an NJCRA action, therefore, it would create the bizarre result of the State paying a civil penalty to itself. This suggests that the legislature did not contemplate State liability under the NJCRA.

8

the New Jersey Tort Claims Act.  (*See* Appellant's Br. at 13-16).  Such abstract evidence, however, is insufficient to overcome the *explicit statutory definition* of "person" contained in § 1:1-2.  Accordingly, the District Court correctly granted summary judgment on Didiano's claims against the State and Balicki, in her official capacity.[5]

**B.**

Even if Didiano has no viable claim against the prison and Balicki, in her official capacity, he argues that he nonetheless has a § 1983 claim against Balicki in her individual capacity.  The District Court concluded that he did not because any such § 1983 claim was barred by the Prison Litigation Reform Act ("PLRA") for failure to exhaust administrative remedies.  We agree.

With respect to the exhaustion requirement, the PLRA provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Under this requirement, the prisoner must pursue all available administrative remedies to their end, and must do so properly, *i.e.*, without procedural default.  *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).  This is true regardless of whether the administrative remedies meet federal standards, whether they are "plain, speedy, and effective," and whether the prisoner seeks relief not available in grievance

---

[5] Because we conclude that the New Jersey statutes explicitly exclude the State from the definition of a "person" under § 1:1-2, we need not address the parties' arguments about whether, and to what extent, the NJCRA should be interpreted identically to § 1983.

proceedings, notably money damages. *Id.* at 227 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

Didiano "concedes that the PLRA applies to him and that he did not complete South Wood's grievance process" because he did not respond to the Corrective Action Form. (Appellant's Br. at 25-26). He argues, however, that that the exhaustion requirement does not apply where "prison officials' conduct so interferes with a prisoner's ability to use the grievance process that the remedy is not 'available.'" (*Id.* at 25). In support of this argument, he relies on *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002). In *Brown*, the district court dismissed a prisoner's lawsuit for failure to exhaust his administrative remedies because he did not file a formal grievance with the prison. On appeal, we vacated the dismissal on the ground that the prisoner raised a genuine issue of material fact as to whether prison officials essentially thwarted or prevented him from exhausting the remedies. The prisoner had alleged that prison officials told him he could not file a formal grievance until the prison's "pre-grievance investigation" had been completed. He waited for months, but was never told that the investigation was concluded. Accepting his allegations as true, we held that the administrative remedies were not "available" to the prisoner within the meaning of the PLRA and the district court improperly dismissed his claim.

Didiano's reliance on *Brown* is misplaced. The thrust of *Brown* is that the prisoner's use of the administrative remedies was frustrated by the prison officials. There

10

is simply no comparable evidence in this case. Rather, Didiano admits that the prison

properly sent him a Corrective Action Form explaining the actions needed to proceed

with his complaints. Because he wanted assistance with the Corrective Action Form, he

went to a "prison paralegal" named Nash. According to Didiano, it was Nash who told

him to take no action and simply wait for the prison to set up a meeting. If there was

evidence that Nash was a prison official, this case would fall squarely within *Brown*.

Defendants contend, however, that "prison paralegals" are not prison officials, but rather

are fellow inmates who provide advice and counsel, and there is nothing in the record (or

even in Didiano's brief) to contradict that. The fact that Didiano got bad advice from a

fellow prisoner is unfortunate, but it does not excuse his failure to exhaust the

administrative remedies.

Didiano is left to argue that he told a prison psychologist that he was expecting a

meeting with the prison and asked him to "follow-up" to see if a meeting would be

scheduled. Even assuming the psychologist is a prison official, we are nonetheless

unpersuaded. According to defendants, prison psychologists do not have any authority

related to the Inmate Remedy System. The grievance system is instead handled by the

social workers, housing unit officers, and the Inmate Remedy Coordinator. Once again,

there is nothing in either the record or Didiano's brief to refute this. In any event, the fact

that the psychologist did not follow-up on Didiano's inquiry regarding a meeting is not

the kind of active "thwarting" of the grievance system that was present in *Brown*—

11

especially in light of the fact that the Corrective Action Form specifically told Didiano what he needed to do to proceed.[6] Accordingly, the District Court did not err in granting summary judgment on Didiano's § 1983 claim against Balicki in her individual capacity.

## III.

For the foregoing reasons, we will affirm the order of the District Court.

---

[6] Although Didiano asserts he has difficulty with the English language, he did not at any time seek assistance from prison staff in understanding the Corrective Action Form.