**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2939
_____

ANTHONY J. PIPITO,
                                        Appellant

v.

LOWER BUCKS COUNTY JOINT MUNICIPAL AUTHORITY;
VIJAY RAJPUT, IN HIS INDIVIDUAL CAPACITY ONLY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-04885)
District Court Judge: Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 26, 2020

Before:  JORDAN, RESTREPO and FUENTES, *Circuit Judges*.

(Filed:  August 13, 2020)
_____

OPINION*
_____

RESTREPO, *Circuit Judge*.

Anthony J. Pipito, a wastewater operator at the Lower Bucks County Joint

Municipal Authority, brought this First Amendment action under 42 U.S.C. § 1983

against the Authority and its managing director, Dr. Vijay Rajput. He claims that

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

provisions of a disciplinary memorandum issued by Rajput infringe on his right to engage in protected speech outside of the workplace. The District Court granted summary judgment in the Defendants' favor, while also concluding that Pipito lacked constitutional standing. For the reasons that follow, we conclude that the District Court should not have reached the merits of the case, and we agree with the District Court that Pipito failed to demonstrate injury in fact to establish standing. Accordingly, we will vacate the District Court's grant of summary judgment and remand the case for dismissal based on lack of standing.

**I**

Pipito is a certified wastewater operator at the Authority, which operates a wastewater treatment plant and a water filtration plant in Bucks County, Pennsylvania. This case centers on a disciplinary memorandum (the Memorandum) that Rajput, the Authority's managing director, issued to Pipito on July 26, 2018.

The Memorandum, with "Harassment" as its subject line, explains that its "purpose . . . is to document the complaints brought against [Pipito] from [other employees of the Authority] Walter Appleton . . . and Leonard Rodak . . . includ[ing] but . . . not limited to, creating a hostile work environment, harassment, intimidation, making disparaging/derogatory remarks, mocking and breach of the Civility Policy using foul language." App. 72. The Memorandum goes on to explain that "[i]t is the responsibility of the Authority to provide a safe, harassment free and non-hostile work environment to all its employees at all the times within the Authority's premises." App. 72.

The Memorandum requires that Pipito adhere to the following rules:

1. No contact whatsoever with Leonard Rodak except reporting problems pertaining to the plant operation.
2. No contact whatsoever with Walter Appleton except in an emergency situation and/or as specified in the [Wastewater Treatment Plant Standard Operating Procedures].
3. Refrain from making any gesture/mocking/disparaging or derogatory remarks/rumors to or about Walter Appleton, Leonard Rodak or any other employee.
4. You are not to engage in any discussions regarding Leonard Rodak and Walter Appleton with other employees.
5. Compliance with the Authority's Civility Policy.
6. Present any WWTP/Personnel/Human Resource concerns directly to Michael Andrews, P.E., WWTP Manager.

App. 72 (noting that failure to comply may result in "disciplinary action . . . up to and including termination of employment with Authority").

On November 13, 2018, Pipito filed a civil rights action under 42 U.S.C. § 1983 against the Authority and Rajput alleging that the Memorandum unlawfully restricts his First Amendment right to engage in protected speech outside of the workplace. The Authority and Rajput moved to dismiss his Complaint. On February 21, 2019, the District Court denied their motion.

The parties subsequently filed cross-motions for summary judgment. On July 24, 2019, the District Court granted summary judgment in favor of the Authority and Rajput. Pipito timely appealed.

**II**

**A**

This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291.[1] We exercise plenary review over a District Court's standing determination.

---

[1] Notwithstanding our statutory jurisdiction over this action, our conclusion that Pipito has not established constitutional standing "means that we do not have subject matter jurisdiction to reach the merits of [his] claims." *Finkelman v. Nat'l*

3

*AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, 270 F.3d 162, 168 (3d Cir. 2001) (citing *Gen. Instrument Corp. of Del. v. Nu–Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 86 (3d Cir. 1999)). In reviewing a decision regarding standing, "each element . . . must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Finkelman*, 810 F.3d at 194 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Here, the District Court ruled that Pipito lacked standing at the summary judgment stage. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). This Court "must view all evidence in favor of the non-moving party." *Id.*

**B**

Constitutional standing, under Article III, § 2, requires three elements: "injury in fact," "a causal connection between the injury and the conduct complained of," and a likelihood that a favorable decision will redress the plaintiff's injury. *Lujan*, 504 U.S. at 560–61. To establish injury in fact, the element at issue here, a plaintiff must demonstrate an invasion of a legally protected interest that is (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *Id.* at

---

*Football League*, 810 F.3d 187, 192 n.31 (3d Cir. 2016) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.")).

560 (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

If the plaintiff intends to demonstrate "imminent" injury in a pre-enforcement action, he or she must demonstrate "a realistic danger of sustaining a direct injury" if the challenged rule is enforced. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see also N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 238 (3d Cir. 2011) (requiring "a realistic chance—or a genuine probability—that a future injury will occur"); *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 169 (3d Cir. 2007) (concluding that a party's claim of chilled speech was "too speculative" to establish standing). "Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbit*, 442 U.S. at 298).

An allegation of injury caused by chilled speech must claim a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (stating that "[a]llegations of a subjective 'chill' are not . . . adequate"); *see also Black*, 489 F.3d at 166 n.10; *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 364 (3d Cir. 2014) (noting that "a speculative series of conditions" would be insufficient to establish injury in fact).

Courts have found standing in pre-enforcement First Amendment actions when plaintiffs have demonstrated a realistic potential for engagement in protected speech

that the challenged rule prohibits. *See, e.g.*, *Aichele*, 757 F.3d at 364. In *Aichele*, this Court found a First Amendment challenge to portions of Pennsylvania's election code justiciable because the appellants supported their claim with "sworn and uncontested declarations that their plans for seeking public office [were] directly impeded by the relevant provisions of the election code." *Id.*

Here, Pipito argues that the Memorandum unlawfully restricts his protected speech outside the workplace because it "does not circumscribe its restrictions to the Authority's premises or while [he] is working." Appellant Br. 11. Interpreting the Memorandum as applying outside the workplace, Pipito argues that it would:

- "prohibit [him] from speaking with Rodak at church on matters of religion,"
- prohibit him from talking to Appleton "at a township meeting on matters of zoning policy,"
- prevent him "from reporting environmental violations committed by Rodak to the state Department of Environmental Protection,"
- prevent him "from filing a complaint with the U.S. Equal Employment Opportunity Commission [EEOC] against the Authority for racial discrimination in hiring,"
- "bar [him] from disclosing" corruption or wrongdoing at the Authority,
- dissuade him from attending "a protest in Doylestown (the county seat)" out of concern that he would come in contact with Rodak,
- make him "reluctant to go to a public meeting of the Authority's board for fear of encountering Rodak and running afoul of the memorandum,"
- cause him to fear being fired for knocking on Rodak's door if he were to run for public office and "pitch for his candidacy" door-to-door, and
- make him fear losing his job if he were to "file a complaint with the Pennsylvania State Ethics Commission regarding Rajput's compliance with the Commonwealth's conflict of interest proscriptions."

Appellant's Br. 11, 23–24.

The Authority asserts both that the Memorandum's directives are limited to the workplace and that Pipito's "professed concerns" about chilled protected speech are

"merely speculative scenarios."[2] Appellees' Br. 39. In line with the Authority's arguments, the District Court found that Pipito lacked standing. App. 34 ("At best, we have Mr. Pipito's belief if he wanted to speak on matters of public concern, he would suffer discipline at work. There is nothing in the record to support this contention."). We agree. We must note, however, that the District Court erred by addressing the merits of Pipito's First Amendment claim despite finding a lack of standing. Standing is a "fundamental jurisdictional question;" therefore, "challenges to standing must be addressed before reaching the merits." *AT&T Commc'ns of N.J., Inc.*, 270 F.3d at 168 (citing *Steel Co.*, 523 U.S. at 102); *see also Finkelman*, 810 F.3d at 193 ("A federal court's obligation to assure itself that it has subject matter jurisdiction over a claim is antecedent to its power to reach the merits of that claim.").

We agree with the District Court that the record fails to support Pipito's premise—that the Memorandum applies outside the workplace. The Memorandum's opening paragraph plainly states that its purpose is to document workplace harassment complaints against Pipito, and it specifies that "[i]t is the responsibility of the Authority to provide a safe, harassment free and non-hostile *work environment* to all its employees at all the times *within the Authority's premises*." App. 72 (emphasis added). By any reasonable reading of the Memorandum's plain language (and absent any evidence to refute that reading), it is constrained to the workplace. This eliminates any "credible threat of prosecution" for protected speech that takes place outside of

---

[2] Pipito conceded that if the Memorandum applied only to his speech at work, he would not have a viable claim. He does not challenge the Memorandum's application to his on-the-job speech.

the workplace. *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbit*, 442 U.S. at 298). Pipito has not demonstrated any reason to believe that the Authority would punish him for his protected speech outside of the workplace notwithstanding the Memorandum's clear language.

Separately, none of Pipito's asserted chilling effects graduate from a "subjective 'chill'" to a "specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13–14. Prior to the Memorandum, Pipito had never run for public office, had never participated in a protest, had never had discussions with Mr. Rodak or Mr. Appleton at the Authority's board meetings, had never attempted to contact or contacted the district attorney's office regarding the Authority or its employees, had never made a public complaint about Rodak's, Rajput's, or the Authority's conduct or practices that he finds concerning, and had never reported discrimination to the EEOC. Further, there is no indication that Pipito previously engaged in any other purportedly chilled speech that would indicate a future probability of him doing so—and no indication that any of his hypothetical chilled speech examples amount to more than a "speculative series of conditions." *Aichele*, 757 F.3d at 364. His hypotheticals simply fail to establish "a realistic danger of sustaining a direct injury." *Babbitt*, 442 U.S. at 298.

Given the above analysis, Pipito has failed to establish injury in fact. Accordingly, we will vacate the District Court's grant of summary judgment and remand the case for dismissal based on lack of standing.