NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3729-15T4

CITY COUNCIL OF THE CITY
OF ORANGE TOWNSHIP,

    Plaintiff-Respondent,

v.

WILLIS EDWARDS III,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 19, 2018**
>
> **APPELLATE DIVISION**

Argued May 2, 2018 — Decided June 19, 2018

Before Judges Alvarez, Currier, and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1805-13.

Michael A. Cifelli argued the cause for appellant (Florio Kenny Raval, LLP, attorneys; Michael A. Cifelli and Edward J. Florio, of counsel and on the briefs; William J. Maslo, on the briefs).

Robert L. Tarver, Jr., argued the cause for respondent (Law Offices of Robert L. Tarver, Jr., attorneys; Jeff Thakker, of counsel and on the brief; Robert L. Tarver, Jr., on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

In this matter, we consider whether the appointment of defendant Willis Edwards III to the position of Deputy Business Administrator in the City of Orange Township (City) was unlawful and whether defendant knowingly remained in the unauthorized position. If so, we must determine whether disgorgement of defendant's salaries is the appropriate remedy for the illegal action.

We conclude, upon review of the record and applicable principles of law, that the appointment was ultra vires because the mayor lacked the authority to place defendant in the position. As defendant was aware that serving in the position was a violation of state and local law, he did not act in good faith in remaining in the position and collecting a salary. Therefore, we are satisfied that the equitable remedy of disgorgement is appropriate under these circumstances. We affirm.

In July 2012, the mayor of the City[1] appointed defendant to the position of Acting Business Administrator. The City's ordinances permitted defendant to hold the position for a term not to exceed ninety days; the appointment did not require the advice and consent of City Council. At the end of defendant's

---

[1] The mayor at the time of these events was an attorney practicing law in this state.

ninety-day term, the mayor appointed him to the full-time position of Business Administrator, which did require the advice and consent of City Council.

The municipal government of the City is organized as a "Mayor-Council Plan D" form of government under the Faulkner Act, N.J.S.A. 40:69A-1 to -210. This Act, in conjunction with City ordinances, requires persons appointed to the position of a department director, such as the Business Administrator, receive the advice and consent of City Council. On October 2, 2012, plaintiff, City Council of the City of Orange Township (plaintiff or City Council), voted against confirmation of defendant to the position. The following day, the mayor appointed defendant as Deputy Business Administrator, setting a yearly salary of $105,000.[2]

City Council objected to the appointment. A letter to the mayor on October 16, 2012 memorialized City Council's objections and informed him defendant's term as Acting Business Administrator had expired and the Council had not confirmed him as Business Administrator. The mayor had no authority to appoint a deputy; only the department head had that authority.

---

[2] He received an additional stipend of $10,000 for his service as Affirmative Action Officer. At the time of his resignation on December 31, 2015, defendant's compensation had increased to $120,000.

Nevertheless, defendant continued in the position, signing official documents as the Business Administrator and collecting a salary.

In March 2013, plaintiff presented an Order to Show Cause and verified complaint against the mayor[3] and defendant, seeking to enjoin defendant from serving as Deputy Business Administrator. A March 8, 2013 order required defendant and the mayor to appear and show cause why the court should not issue a preliminary injunction. Defendant filed an answer and third-party complaint against five City Council members in their individual and official capacities.

After oral argument, the court issued an order on April 18, 2013, stating:

> 1. [Defendant] shall not perform any of the functions of Business Administrator or Acting Business Administrator after May 30, 2013, unless appointed to those positions through the advice and consent of City Council.
>
> 2. On or before the date of May 30, 2013, the City of Orange Township shall appoint a Business Administrator or Acting Business Administrator to head the Department of Administration as required by Statute and Ordinance.

---

[3] On the eve of trial, the parties stipulated to the dismissal of the mayor from the lawsuit. Therefore, we refer to Willis Edwards III as defendant.

> 3. The City shall be required to comply with . . . N.J.S.A. 40:69A-43.1 and 43.2 in the appointment of any Deputy Director and any such appointment shall be made by the Director of the Department and the salary of that Deputy must be approved by the City Council.
>
> 4. The Counterclaim and Third Party Complaint filed by [d]efendant . . . shall be dismissed in its entirety without prejudice.

As a result of this order, defendant subsequently left the position of Deputy Business Administrator and the mayor appointed him Chief of Staff.[4]

Defendant and the mayor filed motions for reconsideration, which were granted by a different judge than had considered the Order to Show Cause. On February 28, 2014, in an oral decision, the second judge found it improper for his predecessor to have issued injunctive relief without hearing testimony. He therefore vacated paragraphs one and two of the April 2013 order, and amended paragraph four to reinstate one count of the third-party complaint.

Following the ruling, plaintiff's counsel queried: "Judge, just so that I'm clear and I get this, . . . is it the [c]ourt's intention by vacating [c]ounts 1, 2 and 4 that Mr. Edwards can now serve as the deputy business administrator because . . .

---

[4] Defendant received the same salary for Chief of Staff as he was paid as Business Administrator.

that was the thrust of the initial complaint." The judge responded: "The effect of the order vacating [the prior] order does just that. <u>The factual effect of it, you know, remains to be executed</u>. All I did was vacate the order based upon the reasons I stated." (Emphasis added). Following the issuance of this order, defendant re-assumed the position of Deputy Business Administrator.

Trial[5] was scheduled for January 4, 2016 before Judge Christine A. Farrington. Defendant resigned from the position of Deputy Business Administrator on December 31, 2015. As a result, he contended the matter was moot and requested a dismissal.[6]

Testimony at trial from a current councilwoman corroborated City Council's rejection of the appointment of defendant as Business Administrator and that a City ordinance required the mayor to remove acting persons after ninety days if the Council did not approve them. The councilwoman also advised the appointment of defendant as Deputy Business Administrator was contrary to the municipal ordinance. Only the head of a

---

[5] A trial initially began in September 2015. After opening statements, the parties entered into a settlement agreement. Shortly thereafter, material terms of the agreement were breached, and the court vacated the settlement.

[6] The court reserved decision on the motion.

department could appoint a deputy director. The mayor had no authority to appoint a Deputy Business Administrator. That was the province of the Business Administrator.

The councilwoman further stated that even when defendant briefly left the position pursuant to court order and assumed the job of Chief of Staff, he continued to perform duties of the Business Administrator. Finally, the councilwoman confirmed City Council did not approve defendant's salary, which exceeded the salary of other deputies by $25,000 to $30,000.

Plaintiff's second witness, the municipal clerk, testified that the position of Deputy Business Administrator had never been lawfully created. A position of Assistant Business Administrator was created in 1985 but repealed that same year. Therefore, the positions of both Deputy and Assistant Business Administrator were unlawful after that time. She further advised the City had never enacted an ordinance creating a Chief of Staff, and it did not approve the salary of defendant in that post.[7]

Defendant also testified. In addition to his Bachelor of Arts degree, he holds a dual Masters degree in finance and business management from Columbia University. He was currently

---

[7] The clerk acknowledged that previous people have held the title of Chief of Staff.

pursuing his MBA from New Jersey Institute of Technology and was a Ph.D. candidate at Seton Hall University. Defendant had served as a New Jersey state legislator and on numerous boards in both New York and New Jersey. Defendant advised as a college professor for more than twenty years, he was familiar with municipal government because he taught courses in government and public administration.

Defendant's testimony conflicted on whether he ever read the pertinent statutes and municipal ordinances regarding his position. At times, defendant testified he did not read the applicable ordinances and statutes, at other times, he thought the statutes, codes, and court orders were subject to differing interpretations. He was adamant the mayor appointed him to the position, thus rendering defendant blameless for any wrongdoing, and claimed ignorance of the unlawfulness of his position. He also denied knowledge of his removal from the position by court order or that the Deputy Business Administrator position was unauthorized.

In a comprehensive, well-reasoned opinion, Judge Farrington determined defendant's appointment to the position of Deputy Business Administrator was ultra vires in the primary sense as the mayor had no authority to appoint a Deputy Business Administrator. She stated the actions of defendant and the mayor

were purposeful and designed to circumvent City Council's decision to deny confirmation.

Judge Farrington found both the councilwoman and municipal clerk knowledgeable and credible. In contrast, the judge described defendant as "argumentative, combative and evasive." She noted his "impressive education credentials" and his background of serving as a state legislator and college professor conflicted with his numerous declarations that he did not understand questions posed, was ignorant of the City ordinances and applicable statutes, and had a lack of knowledge and recall.

Judge Farrington further concluded defendant was a de facto officer and he had not rendered his services in good faith as either the Deputy Business Administrator or Chief of Staff. Reiterating that defendant was not credible, the judge found, in light of his extensive experience working in government and advanced degrees in public administration, "[h]is attempts to present himself as an innocent party and cast blame for the appointments on the [m]ayor are unconvincing and disingenuous. . . . [H]e knew or had the ability to know the requirements of state and local law."

The judge concluded disgorgement of defendant's salary was the appropriate remedy for his deliberate and knowing actions.

Because defendant intentionally violated the statutes and City ordinances, she rejected defendant's contention that he was entitled to his salary under a quantum meruit theory. The court ordered remuneration for all salary defendant received serving in the unauthorized position of Deputy Business Administrator.[8]

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011)). Although our review of legal determinations made by the trial court is de novo, we do not disturb the factual findings of the trial court "unless we are convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Seidman, 205 N.J. at 169). Additionally, we defer to the trial court's credibility determinations, because it "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

---

[8] Plaintiff did not seek the return of salaries paid to defendant as Chief of Staff.

On appeal, defendant argues the court erred in determining his conduct was ultra vires or, if it was ultra vires, it was not an act in the primary sense because City Council ratified his conduct in approving yearly budgets that included his salary.

Two forms of ultra vires acts exist under the law: ultra vires acts in the primary sense and ultra vires acts in the secondary sense. See Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 368 (2000). Ultra vires acts in the primary sense are "act[s] utterly beyond the jurisdiction of a municipal corporation" and are void. Ibid. (quoting Summer Cottagers' Ass'n v. City of Cape May, 19 N.J. 493, 504 (1955)). In contrast, an ultra vires act in the secondary sense arises from the "irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. . . . [It] does not preclude ratification or the application of the doctrine of estoppel."[9] Ibid. (quoting Summer Cottagers' Ass'n, 19 N.J. at 504).

---

[9] The doctrine of equitable estoppel, however, is "applied against a municipality only in very compelling circumstances," Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 244 (App. Div. 2002), and is "rarely invoked against a governmental entity." Twp. of Middletown, 162 N.J. at 367 (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999)).

As did the trial court, we employ a two-step analysis in reviewing the validity of a government appointment. See Casamasino v. City of Jersey City, 158 N.J. 333, 347 (1999). First, we must determine whether the appointment was ultra vires and, if so, whether it was in the primary or secondary sense. Ibid. Second, if the appointment was ultra vires in the secondary sense and can be ratified, then we must determine whether the appointment was "made with the same formalities required for the original exercise of power" and, thus, was properly ratified. Ibid.

For a municipal decision or action to be considered ultra vires in the primary sense, the municipality must be "utterly without capacity to perform the act or make the appointment." Maltese, 353 N.J. Super. at 246 (quoting Casamasino, 158 N.J. at 347). "[A] void act results where the public officer has no authority to act at all." Independence One Mortg. Corp. v. Gillespie, 289 N.J. Super. 91, 94 (1996). In comparison, an act is ultra vires in the secondary sense when the action is generally within the power of the municipality but was carried out improperly or irregularly. See ibid.

The appointment of a Deputy Business Administrator is controlled by N.J.S.A. 40:69A-43.1, which provides: "The director of each department . . . may appoint a deputy director

of his department who shall serve, and be removable at the pleasure of the director." The power to appoint deputy directors is, therefore, solely vested in the directors of the departments, not the mayor.

Here, the mayor nominated defendant to the position of Acting Business Administrator. This appointment was within his authority. See N.J.S.A. 40:69A-43(b) ("Each department shall be headed by a director, who shall be appointed by the mayor with the advice and consent of the council"). The corresponding City ordinance provides the mayor's department head appointments must have the advice and consent of City Council. Orange, N.J., Code § 4-24(A) (2015).

Plaintiff voted to reject the nomination of defendant as Business Administrator on October 2, 2012. The mayor did not appoint anyone else to fill that position.[10] Instead, the next day, in circumvention of City Council, the mayor appointed defendant to the position of Deputy Business Administrator in violation of both state and local law as the power to appoint deputies lies with the department director. See Orange, N.J.,

_____

[10] Section 4-24(A)(4) of the City Ordinances requires the mayor to appoint a new person to a department director position when City Council "declines to extend the timeframe within which the person is serving in an acting capacity or directly rejects the person." Orange, N.J., Code, § 4-24(A)(4) (2015).

13

Code § 4-24(C)(1) (2015) (authorizing the department director to "appoint subordinate officers and employees within his/her department"); N.J.S.A. 40:69A-43-1 (permitting a department director to appoint a deputy director who serves at the director's pleasure).

The mayor acted outside the bounds of his statutorily prescribed authority, exercising instead a power only vested in the director of a department. As there was no authority for defendant to serve in the deputy position, the mayor's appointment of a deputy was an illegal act — an act that was ultra vires in the primary sense and, therefore, void.

We find defendant's argument that he accepted the position of Deputy Business Administrator in good faith and with the "reasonable understanding" that the mayor had the authority to appoint him to the post disingenuous. Defendant is a highly educated man who had served in the state legislature and taught college courses in municipal government and public administration. He acknowledged having reviewed the Faulkner Act, N.J.S.A. 40:69A-1 to -210, and the City ordinances that pertained to his employment.

Defendant also knew of City Council's objection to him serving in the deputy position. If there was any doubt, it was certainly alleviated when he was named as a defendant along with

14

the mayor in plaintiff's application for injunctive relief and Order to Show Cause. He was in court during the Order to Show Cause ruling and was directed in the April 2013 order to step down from the deputy position as his appointment was in violation of section 4-24(A)(4) of the City ordinances.

Following the April 2013 order, defendant was removed from the deputy job and appointed as Chief of Staff, evidencing an awareness by him and the mayor of the illegality of his appointment. Although certain portions of the April order were vacated in a subsequent reconsideration, the provision ordering the City to comply with the statute's regulations concerning the appointment of a deputy director remained in effect. That provision directed any appointment of a deputy director be made by the director of the department and the salary for that position be approved by City Council. Nevertheless, in February 2014, in contravention of this order, defendant resumed the position of Deputy Business Administrator. Any claim of ignorance of the applicable laws is defeated by the ample divergent evidence in the record.

The record is bereft of any facts to support defendant's contention that plaintiff ratified his actions at any point. The filing of a lawsuit to enjoin his continued employment is more than sufficient to defeat that argument. His position that

15

plaintiff's passage of a budget affirmed his salary and ratified his actions is also without merit. Witnesses at trial confirmed the budget did not contain line items for specific salaries; it set a budget for each department and the mayor then determined the salaries for personnel.

Judge Farrington also rejected defendant's argument that he should retain his salary based upon the de facto officer doctrine.[11] This doctrine, based on considerations of policy and public convenience, recognizes the validity of actions undertaken by a person who acted in a legally non-existent position. See Jersey City, 57 N.J. Super. at 27. In that case,

---

[11] A de facto officer is:

> one whose acts . . . will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised,
>
> . . . .
>
> . . . under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.
>
> [City of Jersey City v. Dept. of Civil Serv., 57 N.J. Super. 13, 27 (App. Div. 1959) (quoting State v. Carroll, 38 Conn. 449, 471-72 (Sup. Ct. Err. 1871)).]

we considered the consequences of the actions of a person who "had the reputation of being a public official and possessing the authority purportedly vested in such position" but who served in a position that had no de jure existence. Id. at 28. Because the faux official's actions could affect third parties, we determined she would be considered a de facto officer and her actions deemed valid despite the absence of a de jure office. Ibid. Under the circumstances here, in light of defendant's performance of duties under the guise of the City's Deputy Business Administrator, we deem he was properly considered a de facto officer. The doctrine is appropriately applied here to protect innocent third parties who relied on the acts of defendant holding himself out as having the authority of a public officer. See, e.g., Casamasino, 158 N.J. at 349-51; Jersey City, 57 N.J. Super. at 27.

Defendant testified as Deputy Business Administrator he presented resolutions to City Council for its approval, reduced spending and salaries, consolidated departments, eliminated contractors, entered into contracts with third parties and approved invoices, proposed a bond ordinance and infrastructure reinvestment, and worked with the governor and legislature on grants. He advised he was instrumental in obtaining an appropriation from the legislature of several million dollars

for needed infrastructure repairs and operational needs of the city. Clearly, the official acts defendant performed in his public office capacity must be valid and binding as to third parties and the public. Any other conclusion would create chaos and uncertainty for all dealings defendant had with others under color of a legal authorized position. See Slurzberg v. Bayone, 29 N.J. 106, 139 (1959) (work done for a municipal office not created, or properly filled, by ordinance or statute is void regardless of whether the City accepts that office's work product).

We disagree, however, with defendant's contention that his status of a de facto officer entitles him to retain the compensation he received for the services he rendered on behalf of the City. He argues "clear interests of justice, morality and common fairness" entitle him to retain his salary. However, the issue of the validity of his acts performed as a purported public official is distinct from his entitlement to retain his salaries.

Inherent in a decision to compensate a de facto officer for his services is the tenet that such services were rendered in good faith. "[A] de facto officer may, by his good-faith rendering of services, acquire rights against the municipality" entitling him to compensation. Jersey City, 57 N.J. Super. at

37. A de facto officer carries the burden of showing he acted in good faith and is thus entitled to compensation. See id. at 37-38; Casamasino, 158 N.J. at 349-51. Our determination that defendant's actions in accepting and holding the deputy post were ultra vires in the primary sense negates any proposition that he was acting in good faith. To the contrary, the record is replete with evidence of defendant's awareness of his unlawful employment.

Although defendant did not raise N.J.S.A. 40A:9-6 to either the trial judge or this court in support of his argument, we feel it important to briefly address it. That statute, which codified the common law definition of de facto officer provides:

> Any person who has held or who may hereafter hold, de facto, any office or position in the public service of any county or municipality, and who has or shall have performed the duties thereof, shall be entitled to the emoluments and compensation appropriate to such office or position for the time in fact so held and may recover therefor in any court of competent jurisdiction, notwithstanding any refusal or failure of any other person or officer to approve or authorize the payment of said emoluments and compensation.

> [N.J.S.A. 40A:9-6.]

We do not find our decision to disgorge defendant's compensation despite his status as a de factor officer to be incompatible with the statute. The common law precedent permitting the

compensation for services performed by a de facto officer is premised on the qualification that the services were rendered in good faith. See Jersey City, 57 N.J. Super. at 37-38. Here, defendant's "actions do not bespeak the good faith required to invoke the rule of fairness and justice which underlies the grant of compensation to a de facto officer." O'Connor v. Calandrillo, 117 N.J. Super. 586, 596 (Law Div. 1971), aff'd, 121 N.J. Super. 135 (App. Div. 1972).

To remain consistent, we similarly conclude the equitable theories of quantum meruit and equitable estoppel are equally unavailable to defendant. In her thorough decision, Judge Farrington considered these doctrines offered by defendant to support the retention of his salary. She concluded such defenses were inapplicable to defendant who acted willfully and unlawfully, "with knowledge and at [his] peril to circumvent the authority of the Council." Concluding "the services rendered by Edwards in conjunction with both the Deputy [Business] Administrator and chief of staff positions were not rendered in good faith," she determined there was "no interest of justice, morality or common fairness which would dictate a finding Edwards is entitled to retain his salary under the circumstances."

Equitable estoppel and quantum meruit are equitable doctrines reserved for achieving fair and practical resolutions in particular circumstances. See Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 529 (2008) (holding a court has the power to adapt equitable remedies to the particular circumstances of a case). We are satisfied the circumstances to support such equitable remedies are not present here as there is sufficient evidence in the record for Judge Farrington's factual findings that defendant lacked credibility and he knew, or should have known, of the illegality of his appointment.

The trial court ordered disgorgement of defendant's salaries earned while serving as the Deputy Business Administrator. Disgorgement is an equitable claim "grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party suffered any damages." Cty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). It is a harsh remedy and one to be used sparingly.

In First Union, the Supreme Court noted the need for strong remedies, including disgorgement of wrongfully paid fees, to combat unlawful conduct involving public officials. Id. at 58. The remedy has also been successfully invoked when we found a conveyance of land was ultra vires and void ab initio. First

<u>Am. Title Ins. Co. v. Twp. of Rockaway</u>, 322 N.J. Super. 583, 594 (App. Div. 1999).

Defendant conceded knowledge of municipal law and public administration, agreed he reviewed the applicable statutes and City ordinances, and advised he was aware of two court orders stating he was illegally serving as the Deputy Business Administrator. Nevertheless, he remained in the position and took a salary paid out of taxpayer funds. His blatant disregard for the law forced plaintiff to litigate this matter for three years, resulting in the not unexpected conclusion that defendant acted unlawfully in serving as the Deputy Business Administrator.

Defendant has not demonstrated any factual dispute in the events surrounding his appointment, nor any ambiguity in the controlling statutes. As a result, his actions were inexcusable and he displayed a flagrant contempt for the citizens of the City and the law. The sole remedy to make the aggrieved taxpayers whole is to disgorge defendant of the monies paid to him during his service in the unlawful appointment. We, therefore, affirm Judge Farrington's order for the return of all

remuneration paid to defendant for the position of Deputy

Business Administrator.[12]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[12] We find defendant's remaining arguments that the trial court heard "inadmissible evidence" or should have recused itself to be unworthy of a written opinion. R. 2:11-3(e)(1)(E).

A-3729-15T4