**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0614-18T2

TRIPLE T CONSTRUCTION,
LLC, SCOTT RIDINGS,
ORGANIC WASTE SOLUTIONS
LLC, and ORGANIC WASTE
SYSTEMS LLC,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

TOWNSHIP OF WEST MILFORD,
TOWNSHIP OF WEST MILFORD
PLANNING BOARD, NANCY
GAGE, and VINCENT LUPO,

     Defendants-Appellants/
     Cross-Respondents.

_____

Submitted September 10, 2019 – Decided October 15, 2019

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1119-14.

Methfessel & Werbel, attorneys for appellants/cross-respondents (Scott Ketterer and Brent Robert Pohlman, on the briefs).

Robert L. Moshman, LLC, attorneys for respondents/cross-appellants (Robert Lawrence Moshman and Daniel B. Sullivan, on the briefs).

PER CURIAM

This appeal and cross-appeal arise out of a lease and sublease, under which defendant Township of West Milford leased property from plaintiff Triple T Construction, LLC and then subleased the property to plaintiff Organic Waste Solutions, LLC so a "vegetative" waste recycling center could be operated. After the term of the lease and sublease expired, a dispute arose concerning whether the terms of the lease continued to govern under a holdover provision.

The Township appeals and plaintiffs cross-appeal from a judgment entered after a twelve-day bench trial. The trial court found that the lease and sublease had terminated because the Township failed to negotiate in good faith. The court then awarded plaintiffs $315,000 in damages, consisting of $301,500 of unjust enrichment and $13,500 for unpaid rent. The Township contends that the trial court failed to identify the applicable standard for good faith negotiations, erred in not finding a holdover contract, and relied on documents not admitted into evidence. Plaintiffs argue that the trial court abused its

discretion in considering certain contractual issues and erred in determining plaintiffs' damages. Having reviewed the record and law, we are not persuaded by any of these arguments and we affirm.

## I.

For a number of years, the Township had a vegetative waste recycling center where both the Township and its residents could dispose of brush, grass, and leaves. That center was located on three adjacent lots of land referred to as Lots 29, 28.03, and 18.02. Lot 29 abutted Marshall Hill Road and Lycosky Drive and the other two lots were "landlocked," meaning that they lacked direct access to a road.

Plaintiff Scott Ridings is the owner of Triple T and a part owner of OW Solutions. Sometime prior to 2010, Triple T acquired Lot 29, which consists of approximately ten acres and is known as 28 Marshall Hill Road, Block 6002, Lot 29. In 2010, Triple T entered into a lease with the Township, under which the Township leased approximately three-and-a-half acres of Lot 29, so that it could continue to be used as part of the Township's recycling center for vegetative waste. The lease was for a period of thirty-six months and the start of its term was made retroactive to October 1, 2009. The term of the lease ran to September 30, 2012. The lease provided that the Township would pay a

monthly rent of $4500. The lease also had a holdover provision, which stated that the Township "has no right to retain possession of the Premises or any part thereof beyond the expiration of the term of this Agreement, unless the Parties are negotiating a new lease or lease extension in good faith."

On the same day that Triple T and the Township entered into the lease, the Township entered into a sublease with OW Solutions. The sublease allowed OW Solutions to use the three and a half acres of Lot 29 as a compost site. The lease also provided that OW Solutions would allow the Township and its residents to bring brush, grass, and leaves to the site and that OW Solutions would "provide all the tube grinding, screening compost and screening fill services for the site[.]" Township residents were also allowed to take, free of charge, approximately half of the mulch and topsoil produced at the site. For its part, OW Solutions had the right to sell or otherwise dispose of the other half of the mulch and topsoil. In connection with the sublease, the Township also allowed OW Solutions to use an exemption it had received from the New Jersey Department of Environmental Protection allowing composting and recycling of vegetative waste at the site.

The sublease had the same termination date as the lease; that was: September 30, 2012. The sublease also had an identical holdover provision as

the lease. Accordingly, the provision in the sublease stated that OW Solutions "has no right to retain possession of the Premises or any part thereof beyond the expiration of the term of this Agreement, unless the Parties are negotiating a new lease or lease extension in good faith."

In short, the lease and sublease allowed OW Solutions to operate the vegetative waste recycling center. The center accepted brush and vegetation from the Township and its residents, and processed the waste into mulch and topsoil. Township residents could then take some of the mulch and topsoil for free, and OW Solutions could sell the rest. OW Solutions also accepted vegetative waste from contractors and other towns and charged fees for that service.

In the summer of 2012, the parties began discussing a new lease. Triple T wanted to increase the rent and extend the terms of the lease. The Township, in contrast, wanted to reduce its rental payments and to have a shorter term for the lease.

By September 30, 2012, the parties had not agreed to terms for a new lease or lease extension. Nevertheless, the parties and their attorneys continued to communicate and exchange proposals after September 30, 2012. Those discussions went on until July 2013, when the Township informed Triple T that

it would vacate the portion of Lot 29 that it had leased and end the parties' relationship.

The Township also continued to pay the monthly rent after September 30, 2012. The Township sent Triple T monthly rental payments for October 2012 through June 2013. Triple T cashed those rent payments until April 2013, but it did not cash the monthly checks for April, May, or June 2013. In 2014, the Township cancelled the uncashed checks for those three months.

Meanwhile, on October 29, 2012, Super Storm Sandy struck. The storm had a devastating effect on the Township and thousands of trees within the Township were knocked down. As a result, the Township and its residents brought large quantities of trees and other vegetation to the recycling center for disposal and processing. The large increase in the quantity of debris being brought to the recycling center was a topic of discussion while the parties tried to come to terms on a new lease or lease extension.

OW Solutions sent the Township a number of invoices seeking payment for processing the Sandy-related debris. The Township did not pay those invoices, but there were discussions that the Federal Emergency Management Agency (FEMA) might pay those invoices or if the Township paid the invoices, FEMA might reimburse the Township. Payment for the Sandy-related debris

6

remained an issue in dispute when the Township terminated the lease and sublease in July 2013.

In March 2014, plaintiffs Ridings, Triple T, OW Solutions and Organic Waste Systems, LLC (OW Systems) filed suit against the Township, its planning board, and two Township officials.[1] The complaint filed by plaintiffs contained twenty counts that alleged a number of causes of action, including claims for breach of contract, unjust enrichment, fraud, defamation, extortion, malicious prosecution, mental and physical harm, and violations of federal civil rights and the first amendment of the federal Constitution.

Defendants removed the action to federal court based on federal question jurisdiction. Defendants then moved for partial summary judgment to dismiss the majority of plaintiffs' claims. In June 2014, the federal court dismissed seventeen of the twenty counts alleged by plaintiffs. One of the dismissed claims was plaintiffs' breach of contract claim. The federal court also dismissed the unjust enrichment claim against the planning board and the two town officials and, thereby, left that claim only against the Township.

---

[1] In 2013, Ridings established OW Systems and apparently that entity took over the responsibility for operating the recycling center from OW Solutions. Thus, some of the work in processing the Sandy-related debris was performed by OW Systems and some of the invoices for that work were sent by OW Systems.

Thereafter, the federal court ruled that it would not retain jurisdiction over the remaining state law claims and, in January 2017, it remanded the remaining claims to the Law Division. After the action was remanded, there were three remaining claims: an unjust enrichment claim against the Township, a negligence claim, and a trespass claim. Defendants moved for summary judgment on those three claims. The trial court granted summary judgment dismissing the claims of negligence and trespass, but denied summary judgment on the unjust enrichment claim.

In the Law Division, the parties agreed to a bench trial of the only remaining claim, the unjust enrichment claim against the Township. A trial was conducted over twelve days between June 2018 and September 2018.

After the evidence was presented, the trial court rendered its decision on September 12, 2018. The court made its findings of fact and conclusions of law on the record. The trial judge found that the Township had not negotiated in good faith and, as a result, concluded that the holdover provision of the lease had not been triggered. The trial court found that OW Solutions was entitled to damages of $301,500 under the theories of unjust enrichment and quantum meruit.

In making that damage award, the trial court found that OW Solutions had processed 67,000 cubic yards of Sandy-related debris and it was entitled to payment of $4.50 per cubic yard. The trial court found that $4.50 was the appropriate rate because OW Solutions had used that amount on the initial invoices sent to the Township. The trial court also awarded Triple T $13,500, consisting of the rent payments for April, May, and June of 2013. The court then embodied its ruling into a judgment that was entered on September 25, 2018.

## II.

As previously noted, the Township appeals and plaintiffs cross-appeal from the September 25, 2018 judgment. The Township makes three arguments: (1) trial court failed to identify a standard for what constitutes good faith negotiations and, therefore, the matter should be remanded for a new trial under the correct legal standard; (2) the parties negotiated in good faith and the holdover provision was triggered so there should have been no award for unjust enrichment; and (3) the trial court erred by relying on documents not admitted into evidence. On their cross-appeal, plaintiffs make two arguments, contending that the trial court erred: (1) in considering contract issues when the only claim

9

being tried was an unjust enrichment claim; and (2) in its determination of damages.

Having considered the parties' arguments in light of the record and law, we affirm because the trial judge's determinations are supported by substantial credible evidence and we discern no error warranting reversal. We initially, identify our standard of review and then analyze the Township's appeal and plaintiffs' cross-appeal.

A. Our standard of Review

"Final determinations made by [a] trial court sitting in a non-jury case are subject to a limited and well-established scope of review." City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 271 (App. Div. 2018) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). We will not "disturb the factual findings of the trial court 'unless we are convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Id. at 272 (alterations in original) (quoting D'Agostino, 216 N.J. at 182). A trial court's credibility determinations are also accorded deference because the court "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity

10

of a witness.'" Ibid. (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). "To the extent that the trial court interprets the law and the legal consequences that flow from established facts, we review its conclusions de novo." Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017) (first citing D'Agostino, 216 N.J. at 182; then citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.    The Township's Appeal

The Township's first two arguments relate to whether the parties negotiated in good faith. In that regard, the Township contends that it did negotiate in good faith and, therefore, the holdover provision was triggered and the terms of the lease and sublease continued to govern the parties' dealings until the formal termination of the lease and sublease in July 2013. The Township then contends that under the express terms of the sublease, OW Solutions was obligated to accept all debris from the town and its residents without charging any fee. In challenging the decision made by the trial court, the Township asserts that the trial court failed to identify a standard for what constituted good faith and, therefore, we should reverse the judgment and remand for a new trial. We disagree.

11

Here, the term "good faith" was used in the holdover provision in both the lease and the sublease. As such, it is a contractual term and should be given its plain and ordinary meaning. See Kernahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 321 (2019) (citing Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017)). "Good faith" is a common legal term. "Among other things, good faith means 'honesty and belief or purpose' and 'fairness to one's duty or obligation.'" State v. Crawley, 187 N.J. 440, 461 n.8 (2006) (quoting Black's Law Dictionary, 701 (7th Ed. 1999)); see also Restatement (Second) of Contracts, § 205 cmt. a ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . ."). Because courts cannot catalogue every form of bad faith conduct, "[e]ach case is fact-sensitive." Brunswick Hills Racquet Club, Inc. v. Rt. 18 Shopping Center Assocs., 182 N.J. 210, 225 (2005).

The trial court conducted this "fact-sensitive" inquiry. The central issue was whether the parties had negotiated in good faith on the terms of a new lease or lease extension. The trial judge found that although the parties had engaged in negotiations over the course of months, the Township had not participated in those negotiations in good faith. In making that finding, the court reviewed the testimony of the witnesses at trial and the evidence submitted, which included

12

correspondence concerning the negotiations and minutes of the Township's executive committee sessions. Based on that evidence, the trial court found that from the outset, the Township was seeking to end the relationship and to find a way out of the relationship so that it could recycle its vegetative waste without dealing with plaintiffs. Consequently, the trial court's findings concerning the Township's lack of good faith were factual findings based on substantial credible evidence. We discern no basis for reversing the trial court's finding that the Township did not negotiate in good faith.

The Township goes on to argue that the evidence presented at trial demonstrated that both parties were engaged in good faith negotiations. In support of that position, the Township cites to certain findings made by the trial court and details the evidence that it contends supports its position. The short rebuttal to this argument is that the Township simply disagrees with the trial court's factual findings. As already noted, the trial court's factual findings are supported by substantial credible evidence presented at the trial. That the Township can point to other evidence is not a basis for reversing the findings of fact made by the trial court.

Finally, the Township contends that the trial court improperly relied on a document not admitted into evidence in reaching its conclusion that the

Township did not negotiate in good faith.  Specifically, the Township points to the trial court's reference to certain handwritten notes on a document.  In referencing those notes, however, the trial court made it clear that the notes were "not tremendously important."  More importantly, the trial court identified numerous other documents, which had been admitted into evidence, in support of its findings concerning the lack of good faith by the Township.  The trial court also reviewed the testimony of the various witnesses.  Thus, to the extent that the trial court referenced a document not in evidence, there was other substantial credible evidence supporting its findings. Furthermore, the Township has failed to demonstrate that the trial court placed undue reliance on the document that was not in evidence.

When parties do not have an express contract governing their relationship, the law allows for quasi-contractual remedies.  New York-Connecticut Dev, Corp. v. Blinds-To-Go (U.S.), Inc., 449 N.J. Super. 542, 556 (App. Div. 2017). Accordingly, plaintiffs sought damages under the theories of unjust enrichment and quantum meruit.

To establish unjust enrichment, the plaintiff must show that it expected remuneration from defendant at the time it performed or confirmed a benefit on defendant and that retention of that benefit without payment would be unjust.

Woodlands Community Ass'n, Inc. v. Mitchell, 450 N.J. Super. 310, 317 (App. Div. 2017) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)). "Recovery under quantum meruit similarly rests on the principle that one party should not be allowed to be enriched unjustly at the expense of another party." Mitchell, 450 N.J. Super. at 318 (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437 (1992)).

The trial court found that OW Solutions processed a large quantity of Sandy-related debris after the lease and sublease had expired. The court also found that OW Solutions expected the Township to pay for the cost of processing the extra debris at the time that those services were being performed in late 2012 and 2013. Finally, the court found that the Township's receipt of that benefit without payment would be unjust. Accordingly, the trial court's legal findings concerning OW Solution's right to damages under the theories of unjust enrichment and quantum meruit were supported by the trial court's factual findings and were consistent with the law. We, therefore, discern no basis for reversing the trial court's judgment.

C.    Plaintiffs' Cross-Appeal

Plaintiffs first argue that they were unfairly prejudiced when the trial court allowed the Township to introduce evidence concerning its argument that it

negotiated in good faith and the lease and sublease continued to govern the parties' relationship. Plaintiffs contend that the contractual claim had already been dismissed from the case and the Township had failed to raise that claim as an affirmative defense. A review of the record, however, establishes that plaintiffs suffered no prejudice. Indeed, plaintiffs prevailed on their unjust enrichment claim.

Prior to the trial, plaintiffs moved in limine to preclude the Township from raising the issue of whether there was a contract. As they argue now, plaintiffs argued before the trial court, that the Township had waived the affirmative defense that there was a contract and that the trial should focus only on plaintiffs' claim of unjust enrichment. Plaintiffs also argue that if contractual evidence was allowed, they would be prejudiced because they had only prepared for a trial on the unjust enrichment claim.

The trial judge denied plaintiffs' in limine motion. The trial judge reasoned that although the remaining claim was on unjust enrichment, defendants' defense to that claim was that the contract still existed and, therefore, the remedy of unjust enrichment was not available to plaintiffs.

Determinations on the admissibility of evidence are committed to the sound discretion of the trial court. Estate of Hanges v. Metro. Prop. & Cas. Ins.

Co., 202 N.J. 369, 383 (2010) (citing State v. Harvey, 151 N.J. 117, 166 (1997)). We use a deferential standard of review in considering a trial court's decision on the admission of evidence and will only reverse for an abuse of discretion. Ibid.

We discern no abuse of discretion in the trial court's decision to allow the Township to contend that it negotiated in good faith and that the lease and sublease continued to govern the relationship of the parties. As the in limine motion demonstrated, all parties were aware that the contract defense would be an issue at trial. Just as importantly, a review of the trial record establishes that plaintiffs, and their counsel, were well-prepared to address these contentions and they did not suffer any undue prejudice. Indeed, plaintiffs prevailed on their claim that there was no contract and that they were therefore entitled to unjust enrichment. Their argument that they somehow suffered prejudice and, in particular, that their damage claim was somehow negatively affected, is not supported by the record.

Next, plaintiffs contend that there were errors of law, errors of fact, and oversights made by the trial court in its determination of damages. In that regard, they contend that the trial court's determinations of the amount of debris and rate for processing that debris were errors. The questions of the amount of Sandy-related debris processed by plaintiffs and the appropriate rate of

A-0614-18T2

compensation were disputed issues of fact at the trial. The trial judge reviewed the evidence submitted by the parties and found that plaintiffs had not kept accurate records concerning the quantity of debris that was brought to the center for processing. Accordingly, the court looked to certain invoices sent by OW Solutions to the Township. Relying on those invoices, the court found that the Township and its residents brought 67,000 cubic yards of Sandy-related debris to the center. Also using those invoices, the court found that the expected and reasonable compensation was $4.50 per cubic yard as invoiced by OW Solutions itself.

Plaintiffs' arguments concerning the errors of law, fact, and oversight are simply disputes about the factual findings made by the trial judge. While plaintiffs argue that the trial judge "missed the ballpark" in determining plaintiffs' damages, all of those arguments rely on evidence which the trial court considered, but rejected.

We also reject plaintiffs' arguments that the trial court erred in not distinguishing work and invoices sent by OW Solutions and OW Systems. Nor are we persuaded by the arguments that the trial court overlooked three elements of plaintiffs' damages. Again, the trial court did not commit reversible error in not considering those contentions; rather, the evidence was presented and the

18

trial court made its findings based on other evidence, which it found to be more credible. In short, we find no grounds to reverse the trial court's determinations on the amount of and basis for the damages.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0614-18T2