NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0739-22

MATTHEW J. PLATKIN, Attorney
General of New Jersey, on behalf of
AMY KOPLETON, Acting Chief of
THE NEW JERSEY BUREAU OF
SECURITIES,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

OWUSU A. KIZITO, individually
and as Managing Member of
INVESTIGROUP, LLC,

      Defendant-Respondent/
      Cross-Appellant,

and

INVESTIGROUP, LLC, a Hawaiian
limited liability company, and
INVESTIGROUP NP A NJ
NONPROFIT CORPORATION, a
New Jersey nonprofit corporation,

      Defendants-Respondents.
_____

> **APPROVED FOR PUBLICATION**
>
> **May 7, 2025**
>
> **APPELLATE DIVISION**

Argued December 17, 2024 – Decided May 7, 2025

Before Judges Smith, Chase and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000095-20.

Michael Eleneski, Deputy Attorney General, argued the cause for appellant/cross-respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Michael Eleneski, on the brief).

Respondents have not filed a brief.

The opinion of the court was delivered by

SMITH, J.A.D.

In this statutory interpretation matter, we consider a trial court's authority to impose multiple remedies in a single enforcement action under the Uniform Securities Law of 1997[1] (the Securities Law or the Act). Plaintiff, Bureau of Securities, sued defendant and two companies that he owned and controlled. The Bureau alleged that defendants violated the Securities Law by participating in various fraudulent activities.

After the trial court entered default judgment against defendants, it conducted a proof hearing to determine damages. After the hearing, the court entered judgment for the Bureau, granting nearly all the relief requested with one exception. The court denied the Bureau's simultaneous request for restitution against one co-defendant and disgorgement from a related co-

---

[1] N.J.S.A. 49:3-47 to -89.

defendant, finding that N.J.S.A. 49:3-69(a)(2) did not authorize both remedies in the same enforcement action. The Bureau appealed, contending that the trial court erred in its interpretation of the statute. We reverse and remand for the reasons which follow.

## I.

## A.

In October 2020, the Bureau of Securities (plaintiff, or the Bureau) filed a complaint against Owusu Kizito and two companies that he owned and controlled, Investigroup LLC, a for-profit securities firm, and Investigroup NP, a nonprofit company (collectively, defendants). The complaint alleged that from 2016 to 2020, defendants made material misrepresentations to investors, fraudulently sold millions in unregistered Investigroup securities to investors, and misused investor funds. The complaint contained seven counts, alleging violations under various provisions of the Securities Law and unjust enrichment.[2]

---

[2] Count One of the complaint alleged that defendants violated N.J.S.A. 49:3-52(a) by defrauding investors of $2,187,814 by misrepresenting or omitting material facts and diverting at least $960,500 of investor funds to Investigroup NP, and misusing investor funds; Count Two alleged defendant violated N.J.S.A. 49:3-52(b) by misrepresenting or omitting material facts regarding Investigroup's registration status and use of certain proceeds; Count Three alleged defendants violated N.J.S.A. 49:3-52(c) by making fraudulent representations about the offer and sale of Investigroup securities in addition

Among other things, plaintiff sought to permanently enjoin Kizito and Investigroup from: violating the Securities Law; participating in any sale or sale-related activity regarding securities from or within New Jersey; acting as an agent or broker-dealer doing business from, into, or within the state; or controlling an issuer who sold or offered securities in New Jersey. The Bureau further petitioned the court to impose civil monetary penalties for each offense and require defendants to pay restitution and/or disgorge of all profits.

Defendants' answer was eventually suppressed with prejudice in October 2021. In 2022, plaintiff moved for default judgment pursuant to Rule 4:43-2(b). The trial court conducted a proof hearing over eight days during June and July 2022. Multiple witnesses testified, including Kizito, and numerous documents were admitted into evidence. The court made detailed findings based on the comprehensive record established during the hearing. We summarize them here.

_____

to diverting investor funds to Investigroup NP and engaging in sham transactions; Count Four alleged defendants violated N.J.S.A. 49:3-60 by selling unregistered securities; Count Five alleged Kizito violated N.J.S.A. 49:3-56(a) by conducting security transactions without being registered as an agent; Count Six alleged Investigroup violated N.J.S.A. 49:3-56(h) by hiring Kizito, an unregistered agent; Count Seven sought relief in the form of plaintiff's claim for unjust enrichment against defendants.

B.

The court found that Kizito and Investigroup offered and sold securities in the form of investment contracts. Together, Kizito and Investigroup sold at least $16,187,651 of securities to sixty-nine or more different investors. The securities were neither registered with the Bureau and exempt from registration, nor federally qualified. Kizito himself was not registered with the Bureau as an agent authorized to offer or sell securities under N.J.S.A. 49:3-49(b) but did so anyway in his capacity as an employee of Investigroup, LLC, one of the co-defendant companies which he controlled.

Between 2016 and 2018, Kizito diverted a total of $1,500,000 in investor funds earmarked for Investigroup and to Investigroup NP, a co-defendant nonprofit company he also controlled, without alerting investors. Kizito used the diverted funds to: repay prior investors and debts; fund undisclosed litigation; and pay Kizito's personal expenses and debts.

Throughout the course of the scheme, Kizito made numerous misrepresentations or material omissions to Investigroup investors. The misrepresentations included claims that invested funds would be used to grow Investigroup when, in fact, they were used for Kizito's personal and other non-business expenses. Kizito failed to: notify investors that Investigroup was subject to multiple lawsuits and IRS tax penalties; disclose his actual use of

investor funds; or notify investors that he and Investigroup diverted $1,500,000 in investor funds to Investigroup NP. Additionally, Kizito and Investigroup failed to disclose to their investors that neither Kizito nor the securities themselves were properly registered with the Bureau.

C.

In an order supported by a comprehensive written statement of reasons dated August 16, 2022, the trial court enjoined and restrained all defendants from, among other things: violating the Securities Law; selling securities or engaging in any sale-related conduct with regard to securities; transacting in securities without being registered with the Bureau as an agent or broker-dealer; acting as an agent or investment adviser or controlling or associating with any broker-dealer or investment advisor doing business in the state; or controlling or associating with any broker-dealer or investment adviser whose securities were offered for sale in New Jersey.

The court found defendants Kizito and Investigroup, LLC jointly and severally liable for multiple violations of the Securities Law. The court further found that each unlawful offer and sale by Kizito and Investigroup constituted a separate violation under N.J.S.A. 49:3-52(a), (b), and (c); N.J.S.A. 49:3-56(a) and (h); and N.J.S.A. 49:3-60. The court then ordered Kizito and Investigroup to pay $15,161,043 as restitution for investors pursuant to

N.J.S.A. 49:3-69(a).  Finding defendants committed 753 separate violations under the Securities Law in connection with the sale of securities to sixty-nine individuals, the court imposed $1,505,000 in civil penalties on Kizito and Investigroup, LLC, pursuant to N.J.S.A. 49:3-70.1.  The court then combined the restitution, and civil penalty amounts and entered final judgment against Kizito and Investigroup, LLC in the amount of $16,666,043.  On August 17, 2022 the trial court issued an amended order, denying plaintiff's application for disgorgement of $1,500,000 by co-defendant Investigroup NP.  It stated that, "[p]laintiff may receive one, but not all three of the remedies set forth in N.J.S.A. 49:3-69(a)(2)."  The court denied plaintiff's motion for reconsideration on the disgorgement question.[3]

The Bureau appealed.

## II.

"We will ordinarily defer to an agency's reasonable construction of statutes it is charged with implementing.  However, we are not bound to an agency's interpretation of a statute and our review in this regard is always de novo."  Matter of Competitive Solar Incentive Program, 478 N.J. Super. 341, 349 (App. Div. 2024) (citations omitted).

---

[3] Defendant Kizito's cross-appeal brief was stricken as deficient on January 2, 2024.

"The object of statutory interpretation is to effectuate the intent of the Legislature, as evidenced by the plain language of the statute, its legislative history and underlying policy, and concepts of reasonableness." State v. Courtney, 243 N.J. 77, 85 (2020).

"If the plain language leads to a clear and unambiguous result, then our interpretative process is over." Id. at 86 (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "But when the statutory language is ambiguous or a plain reading of the statute leads to an absurd result, 'we may turn to extrinsic evidence, "including legislative history, committee reports, and contemporaneous construction."'" Ibid. (quoting State v. Rodriguez, 238 N.J. 105, 114 (2019)).

## III.

On appeal the Bureau makes a simple argument, which is that N.J.S.A. 49:3-69(a)(2) should be interpreted to authorize restitution and disgorgement in the same enforcement action and, therefore, the trial court erred in rejecting application of both remedies after the proof hearing.

We consider the disputed provision.

The Securities Law is "a comprehensive statutory scheme of securities regulation and investor protection . . . ." Kaufman v. I-Stat Corp., 165 N.J. 94, 112 (2000). "Consistent with its protective purpose, the Act prohibits any

party from engaging in dishonest and unethical practices—'as the bureau chief may by rule define' such practices—vis-à-vis the investing public." Goldfarb v. Solimine, 245 N.J. 326, 336 (2021) (quoting N.J.S.A. 49:3-53(a)(3)). The "Securities Law was adopted 'to promote uniformity and standardization of transactions' consistent with guidance from sister jurisdictions." Ibid. (quoting Cola v. Terzano, 129 N.J. Super. 47, 53-54 (Law Div. 1974) aff'd, 156 N.J. Super. 77 (App. Div. 1977)).

N.J.S.A. 49:3-69(a)(2), which governs Securities Law enforcement actions, provides in pertinent part:

> (a) If it appears to the bureau chief that any person has, or directly or indirectly controls another person who has engaged in, is engaging in, or is about to engage in any act or practice constituting a violation of any provision of this act or any rule or order hereunder, or if it appears that it will be against the public interest for any person to issue, sell, offer for sale, purchase, offer to purchase, promote, negotiate, advertise or distribute any securities from or within this State, the bureau chief may take, in addition to any other enforcement actions available under this act and in the bureau chief's discretion, either or both of the following actions:
>
> . . . .
>
> > (2) Have an action brought by the Attorney General in the Superior Court on the bureau chief's behalf to enjoin the acts or practices to enforce compliance with this act or any rule or order hereunder. Upon a proper showing, a permanent or

temporary injunction, restraining order, or writ of mandamus shall be granted and a receiver or conservator may be appointed for the defendant or the defendant's assets. <u>In addition, upon a proper showing by the bureau chief, the court may enter an order of rescission, restitution or disgorgement or any other order within the court's power, directed to any person who has engaged in any act constituting a violation of any provision of this act or any rule or order hereunder</u>.  The court may not require the bureau chief to post a bond. The court may proceed in the action in a summary manner or otherwise[.]

[(Emphasis added).]

There is overlap between the remedies of restitution and disgorgement, but the concepts are distinct.

Restitution "aim[s] to compensate the victims of the wrongful acts," while disgorgement "is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." <u>Johnson v. McClellan</u>, 468 N.J. Super. 562, 578 (App. Div. 2021) (quoting <u>Edmonson v. Lincoln Nat'l Life Ins. Co.</u>, 725 F.3d 406, 415 n.3 (3d Cir. 2013)).

A purpose of disgorgement is to "deter others from violating securities laws." <u>Id.</u> at 577 (quoting <u>SEC v. Hughes Cap. Corp.</u>, 124 F.3d 449, 455 (3d Cir. 1997)).  Disgorgement is "grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party

suffered any damages." Id. at 578 (quoting City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 279 (App. Div. 2018) (internal quotation marks omitted)). Some jurisdictions have held that "a disgorgement order might be for an amount more or less than that required to make the victims whole." SEC v. Hughes Capital Corp, 917 F. Supp. 1080, 1085 (D.N.J. 1996) (quoting SEC v. Huffman, 996 F.2d 800, 802 (5th Cir. 1993)).[4]

The trial court's exclusive disjunctive reading of the word "or" separating the three remedies—"rescission, restitution or disgorgement"—is not consistent with how "or" is deployed by the Legislature in the rest of subsection (a)(2). N.J.S.A. 49:3-69(a)(2) clearly authorizes the Bureau to pursue a single enforcement action directed at: past and present violations ("has engaged in, is engaging in, or is about to engage in"); violations of both "provisions of" and "orders" under the Act ("violation of any provision of this act or any rule or order hereunder"); and the "sell[ing]" and "offer[ing] for sale" of securities where "it appears that it will be against the public interest" ("sell, offer for sale, purchase, offer to purchase, promote, negotiate, advertise

---

[4] While not at issue before us on appeal, we note that the third statutory remedy, recission, refers to the process by which an "investor returns the security and receives the purchase price in return." SEC v. McNamee, 481 F.3d 451, 457 (7th Cir. 2007).

<u>or</u> distribute any securities"). N.J.S.A. 49:3-69(a)(2) (emphasis added).[5] We have considered the disjunctive "or" in the context of a statute, and interpreted "or" as "and/or". <u>See</u> <u>Wildwood Storage Ctr., Inc. v. Mayor & Council of City of Wildwood</u>, 260 N.J. Super. 464, 471 (App. Div. 1992) ("The word 'or,' while normally used to indicate disjunctive clauses . . . has often been interpreted to mean the conjunctive if this is more consistent with legislative intent.") (internal citation omitted).

To the extent subsection (a)(2)'s disjunctive language can be considered ambiguous, we turn to the statute's legislative history. N.J.S.A. 49:3-75, governs the construction of the Act. It states:

> This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact similar laws and to co-ordinate the interpretation and administration of this act with related federal regulations. The bureau chief and the bureau chief's designees may participate in private investigations and enforcement proceedings and cooperate in sharing information with other State authorities, and with authorities of other states and of federal and foreign governments.

---

[5] We note that subsection (a)(2) also uses the disjunctive to describe both temporary and permanent injunctive relief, each of which the trial court ordered at different stages of this proceeding.

The legislature clearly contemplated that the Securities Law be construed in a manner consistent with jurisdictions which enact similar laws. We consider two cases, one federal and one state, for illustration.

In SEC v. Better Life Club of America, Inc., 995 F. Supp. 167, 179 (D.D.C. 1998), aff'd, 203 F.3d 54 (D.C. Cir. 1999), a federal securities fraud case, the court found that the proper amount for restitution was $25,805,577 in investor principal that remained unreturned. In considering disgorgement, the court found that "[d]efendants are also in possession of the undeserved profits from their illegal scheme." Ibid. The court ordered defendants to disgorge those profits. However, in this instance, the court stated it "would not require defendants to make a double payment by paying the combined amounts of both the restitution liability and the disgorgement liability." Ibid. Instead, the Court ordered defendants to pay a single sum of $25,805,577, plus interest, describing the payment as representing "both restitution and disgorgement." Ibid.

In Oklahoma Department of Securities v. Blair, 231 P.3d 645, 656 (Okla. 2010), the Oklahoma Supreme Court read language identical to that at issue here—"rescission, restitution, or disgorgement"—to "expressly authorize[] both disgorgement and restitution involving a person who has violated the securities laws[,]" adding that "[d]epartmental action for disgorgement and

13

restitution against one who has violated securities laws serves an obvious public purpose." Ibid. (emphasis in original).

We see nothing in the language of N.J.S.A. 49:3-69(a)(2) or the legislative history of the Securities Law which compels us to read the "or" in the phrase "rescission, restitution or disgorgement" as exclusively disjunctive. Indeed, we conclude the that the phrase should be interpreted as "recission, restitution and/or disgorgement." The Legislature has granted a broad authority to the Bureau to seek whatever remedy is "proper[ly] show[n]" to be appropriate under the circumstances. N.J.S.A. 49:3-69(a)(2). Our interpretation of the disjunctive "or" in the remedies provided under subsection (a)(2) to mean "and/or" follows the clear Legislative intent to effectuate proper remedies for violations of the Securities Law.[6]

Beyond parsing the word "or" in the phrase "recission, restitution, or disgorgement," we observe that the Legislature has provided an alternative solution to the question before us. N.J.S.A. 49:3-69(a)(2) also uses the phrase "or any other order within the court's power" immediately following "rescission, restitution or disgorgement." Given that the remedies of

---

[6] This proposition is consistent with the legislative history of the statute. See Assemb. Fin. Insts. Comm. Statement to A. 2990 (June 12, 1997) ("This bill provides the Bureau of Securities strong enforcement powers to deal with securities firms and individuals regulated by the bureau who violate the law.").

A-0739-22

restitution and disgorgement are both "within the court's power" pursuant to N.J.S.A. 49:3-69(a)(2), we easily reach the conclusion that an order which grants both remedies arguably falls under "any other order within the court's power."

Using either analysis, we conclude that restitution and disgorgement can be imposed together in the same Securities Law enforcement action.

Having concluded that disgorgement and restitution can be applied as remedies in the same case, we consider whether disgorgement is an appropriate remedy on this record. Plaintiff asks us to remand to the trial court and direct it to enter an order compelling Investigroup NP to disgorge $1,500,000 without more. We think a better approach is to remand this part of the litigation to the trial court to conduct any further inquiry needed to support such a finding.

As in SEC v. Better Life Club of America, Inc., the trial court must make findings to ensure that there is no double recovery. 995 F. Supp. at 179.

On remand, after applying an interpretation of N.J.S.A. 49:3-69(a)(2) in a manner consistent with this opinion, the trial court must next determine whether disgorgement is appropriate. To do so, the trial court should consider whether it can make appropriate findings based on the existing record, or whether further development of the record is required to support a finding that disgorgement should be imposed to preclude defendants, or any one of them,

A-0739-22

from keeping any illegally obtained profits. See Cnty. of Essex v. First Union Nat. Bank, 186 N.J. 46, 56 (2006) (providing that disgorgement is a remedy to avoid the unjust enrichment of unlawfully obtained profit).

We conclude that the statutory remedy of disgorgement is permissible in tandem with the statutory remedy of restitution under N.J.S.A. 49:3-69(a)(2). We express no opinion on the ultimate question of whether disgorgement should be imposed here. Neither do we impose on the trial court the quantum of additional inquiry needed to answer the ultimate question. We leave this determination to the trial court's sound discretion.

Affirmed in part and remanded in part for proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16